# Cunningham, Appellant, v. Crucible Steel Casting Company.

*Debtor and creditor—Corporation—Evidence—Husband and wife—Competency of witness—Act of May 23, 1887, sec. 5, P. L. 158.*

1. In an action by a married woman against a corporation to recover for money had and received, the plaintiff put in evidence a check for $1,000 drawn by her father to her order, indorsed by her to the order of the company defendant, and indorsed by her husband, the treasurer of the company. She also showed that this check was deposited in bank to the credit of the company and was paid. She testified further that she had borrowed the $1,000 from her father, and that she had loaned it to the company. The defendant offered evidence tending to show that the company received the money not as a loan, but in part payment of shares of capital stock of the company for which plaintiff's husband had subscribed, and for which he subsequently received certificates. The evidence also tended to show that plaintiff neither received nor asked for any obligation as evidence of the alleged debt nor did she receive or demand interest, although she knew that the company was able to pay it; that balance sheets showing the indebtedness of the company, and to whom owing, but omitting her name as a creditor were from time to time presented at stockholders' meetings at which she was present, and no objection was raised by her; and that no demand had been made by her upon the company, or notice given by her of the claim until suit was brought, which was about five years after the date of the alleged loan. *Held*, that the case was for the jury, and that the trial judges committed no error in calling to the jury's attention the various circumstances tending to negative the plaintiff's claim.

2. In such a case it is not error to permit the defendant's bookkeeper to testify that he entered the check in the company's cashbook on a date stated crediting the plaintiff's husband with the money.

3. The plaintiff will not be permitted in such a case to testify that prior to the giving of the check her husband told her the company was short of money, and asked her for the loan of $1,000 to the company, and that in response to this request she procured the check and gave it to her husband as treasurer of the company, and that her husband promised that it should be repaid to her. The admission of such evidence would contravene the provision of sec. 5 of the Act of May 23, 1887, P. L. 158, which forbids a wife to testify against her husband. Such testimony would tend to show that plaintiff's husband was guilty of fraud not only upon her, but upon the company in misappropriating the check to his own benefit.

Argued Nov. 17, 1913.   Appeal, No. 290, Oct. T., 1912, by plaintiff, from judgment of C. P. Del. Co., June T., 1910, No. 156, on verdict for defendant in case of Irene D. Cunningham v. Crucible Steel Casting Company.   Before Rice, P. J., Henderson, Morrison, Orlady, Head and Porter, JJ.   Affirmed.

Assumpsit for money had and received.   Before Broomall, J.

At the trial it appeared that the plaintiff claimed to recover $1,000 which she alleged that she had loaned to the defendant through a check of her father to her order and indorsed by her to the company.   The defendant contended that the check was not given as a loan, but as part payment of a stock subscription of plaintiff's husband. When Mrs. Cunningham was on the stand she was asked this question:

Mr. Taylor: Mrs. Cunningham (witness shown check) is that your check?

"A. My father's to me.   Q. It is for how much? A. One thousand dollars.   Q. Did you deliver that to the defendant company?"

Mr. Dickinson: That is objected to.

The  Court: What is the objection?

Mr. Dickinson: That is asking the witness for an inference as to what she did.

The Court: That is inferential.   The company is an abstraction.   She never saw the company, it has no hand, no body, or soul.   She handed it to some one.   To whom did she hand that check?

The Witness: To the treasurer.

Mr. Taylor: Treasurer of what?

"A. To the treasurer of the Crucible Steel Casting Company."

Mr. Dickinson: I move to strike that out.

The Court: To what person did she hand this check? That is the question.

Mr. Taylor: May we have an exception upon that?

The Court: Yes. [1]

Mr. Taylor: What was this check payable for?

Mr. Dickinson: That is objected to.

The Witness: A loan.

Mr. Dickinson: I move to strike the answer out.

Mr. Taylor: I asked what this was payable for.

The Court: I cannot understand—if this was some undisclosed reason of hers, some undisclosed motive not made known to the defendant, I will have to sustain the objection. If that is what you mean. If the transaction was with some person, then the facts of the transaction would have to be shown. Therefore the objection is sustained if I understand the question.

Mr. Dickinson: If the court please, the record shows an answer to the question.

The Court: Strike out the answer.

Mr. Taylor: Then I offer this check in evidence.

The Court: Are you through with the witness? Then let the other side cross-examine on the paper.

Mr. Taylor: May I have an exception to the last ruling.

The Court: Exception. [2]

Mr. Taylor: You say, Mrs. Cunningham, at that time you didn't owe the company any money?

"A. No, sir. Q. What was the nature of this transaction? A. The company was in need of money."

Mr. Dickinson: That is objected to.

The Court. What was the nature of the transaction?

Mr. Taylor: Yes.

The Court: That is her construction of it; it would be inferential. If there are any facts or circumstances, direct her attention to the facts and circumstances, the nature of the transaction is inferential. Objection is sustained. Exception. [3]

Harry Bloodsworth, defendant's bookkeeper, was asked this question.

Mr. Dickinson: "Q. Have you the books of the company, the account books of the company? A. I have the

cash book.   Q. Do they extend back—show the early transactions?   A. From the beginning.   Q. In whose handwriting?   A. That is my handwriting.   Q. Was the account kept in your handwriting?   A. Yes, sir.   Q. Do you refer to the receipt of the check for $1,000?   A. I have an entry July 29th.''

Mr. Taylor: ''Q. Who made it?   A. ''I did.''

The Court: July 29, in the cashbook?

''A. Yes, page one.   Q. July 29, in the cashbook.''

Mr. Taylor: I would like to object to this testimony, to make a general objection, that no matter what appears in the books of this defendant company, the plaintiff is not a party to them, has no knowledge of them, never did have, and never could have, and is not bound by them.

The Court: It does present this view to me as a contemporaneous act in connection with this check. You show a check made payable to the order of the company.   She says she didn't owe the money.   She puts that check in the hands of her husband, who becomes her messenger to the company.   Now the act of the company in receiving that check from her messenger it seems to me to be an evidential fact for the jury to pass on—to consider.   It seems to me we will have to overrule your objection unless you have something further to say.

Mr. Taylor: No.

The Court: Objection overruled. [4]

Mr. Dickinson: What is the answer?

''A. No other $1,000.   Q. What, if anything, did the company get for that, for the money in which the $1,000 was included, the moneys received from Mr. Cunningham which included the $1,000?

Mr. Taylor: That is objected to.

The Court: I suppose that is in the direction of the opening to prove that the certificate of stock was issued by the company to Mr. Cunningham for this $1,000.   I understand that to be the fact.

Mr. Dickinson. Yes.

Mr. Taylor: There is no objection to his asking whether certain things were done, but to ask if this money paid for the stock, that is another thing. think it ought to be arrived at from the facts that may appear.

The Court: It already appears that the cash account is debited to capital stock. What does the capital stock credit here mean? I understand that to be the inquiry.

Mr. Dickinson: Yes.

The Court: Objection overruled. Exception. [5]

The Witness: 400 shares of stock issued.

Mr. Dickinson: "Q. For that they received, including this $1,000, how much in all? A. Twenty-five hundred dollars. Q. Were the meetings of the directors and stockholders of the company held during these five years that you have mentioned? A. Yes, they were held at Mr. Shimer's house."

Mr. Taylor: I don't know what that has to do with it.

The Court: It is for the jury to consider. It doesn't preclude her if she doesn't demand it, that is true, but where the question of debt or no debt is involved, that is whether a demand has ever been made for a long time, bears somewhat upon the question of debt or no debt. I think it is admissible. Exception for the plaintiff.

Mr. Dickinson: You said you did hold a meeting of the stockholders and directors. How frequently were the directors' meetings held?

"A. Directors' meetings? Q. Yes. A. From what time? Q. Beginning July 25, or whenever that did begin, and ending in July, 1910, when this suit was brought, it is not important after that? A. The directors didn't hold very regular meetings, not monthly meetings or anything like that, every several months on an average. I can give you the dates. [6]

Mr. Dickinson: If the court please, I move to strike

out the testimony of the plaintiff in this case so far as it bears upon the conversation had by her with her husband, on the ground, first, that communications as between husband and wife were barred from the inquiry. Second, that under the facts of this case we are confronted with this situation: The money which she says she gave to her husband was paid over by him to the company, and in consideration for which—for and in consideration of which he received value from the company in the shape of capital stock. And the effect therefore of her testimony is at least to be productive of that sort of charge against the husband.

The Court: It appearing that this money of the plaintiff's was passed by her to her husband, and it appearing to be thus far an uncontroverted fact that he used that money to purchase shares of stock in this corporation, to permit her to contend that she didn't give her money to him for that purpose would convict him of a fraud, and it would divest him of the stock, because if he didn't pay for it, then he is not entitled to it, the company would reclaim the stock, so that the contingency here to avoid is to convict him of a fraud. I gave that question heretofore pretty deliberate consideration and came to the conclusion the marital felicity and harmony that the law is solicitous to preserve wouldn't listen to her to convict him of any fraud and divest him of any property. Therefore, motion to strike out plaintiff's evidence so far as it relates to the transaction between her and her husband is allowed. Exception for the plaintiff. [7]

The court charged in part as follows:

[Now, therefore, in order to solve the question, to go back again, whether there was an implied promise by this company when it received this $1,000 to pay it to the plaintiff, to establish the affirmative of that proposition she has introduced certain evidence. She has produced a check as evidence to support that prop-

osition. Now the significance, and the only significance that that check has in this case is that it discloses upon its face, face and back, that the money which this company received on July 22 came from her. That is the only significance it has in this case. I will explain what I mean by that. There is no obligation on the receiver of a check to pay back the money represented by the check. A check is merely evidence that the man who gives it owes the man who received it so much money. And upon a mere check received by you from me, if you received from me a check for $100, I couldn't sue you to recover that money back, the presumption is that I owed you $100, or I gave it to you, or for some reason it is yours, and hence I gave you money by a check, and after having given you a check I cannot recover that money back. So this check has no significance to entitle this plaintiff to recover back. The only significance—and the significance which it has is that it communicated knowledge to this company that the money came from her; and at that point presumably the money belonged to the company, that she owed them the money. But she is permitted to show, and she is permitted to testify to this fact, and she did testify to it, that when she sent that check or gave it to the company, she didn't owe that money. Now, that is her case in a nutshell. It is all of her case: to show that her money went to the company and that she didn't owe the company the money.] [12.]

Now if I give you money which I don't owe to you, if I hand you money which I don't owe to you, the law raises an implied promise for you to pay it back to me, that is an implied promise. It doesn't require you to say that you will pay it back. It is an implication that you will pay back to me money that I have paid to you that I don't owe to you. That is her case.

[Now at that point, if there was nothing else in the case, at that point she would be entitled to a verdict in my judgment. Now the defendant contends and shows

a condition of things which gives rise to the inquiry: when this company received this money did they receive it as hers, or did they receive it as money which either belonged to or was under the control of the husband. If having received the money as hers, then, as I repeat, the law raises the implied promise that they shall pay it back to her; but, on the other hand, if they received the money as money belonging to or under the control of the husband and not hers, then the law raises no implied promise on their part to pay it back to her.] [13.] And all the evidence introduced has been introduced for the purpose of enabling you to determine that question: did they receive the money as hers as indicated by the check, or did they receive the money as belonging to or controlled by her husband?

[Now the defendant has introduced evidence and points you to the fact that at the very time when they received this money they issued a certificate of stock to the husband; they produce their books in which they make a contemporaneous entry that they received this money from the husband for the capital stock, and the certificate for which they didn't issue at the time, immediately at the time, because the $1,000 was not sufficient to pay for it in full; but subsequently payment was made to pay for the stock in full, and subsequent to that time, or at that time, or subsequently in November, 1905, they issued to him a certificate of stock. And you will inquire at that point, if they received his money, you will inquire at that point, if they received this money as hers. If not, what is there to account for, is there anything to account for? They have issued an obligation to him for the money in the shape of a certificate of capital stock. Contemporaneous transactions, acts done simultaneously, contemporaneous to the transaction are, it is true, subject to the inquiry of imposition, or mistake, yet as a rule people ordinarily act honestly, and in good faith; but is there any reason submitted here that this company knew that it was re-

ceiving this lady's money for her account, for at the time they issued to the husband a certificate of stock in return for the very money represented by this check. The defendant points you to that circumstance, and you will accord to it such weight as in your good judgment it is entitled to receive.] [14.]

The defendant has introduced evidence further and contends that there was no demand ever made by this plaintiff upon this company for this money. To the extent that the evidence supports that proposition it is entitled to due weight, and if it be that this lady on July 22, 1905, paid this money to the company as hers, subject to be demanded whenever she wanted it, absence of any demand for the return of this money, the defendant contends to you is significant, and tends to show that this company received the money, not as hers, but as money belonging either to her husband or under the control of the husband through some arrangement between the husband and the wife.

The defendant has further introduced evidence, and asks you to give it due weight—asks you to give due weight to the fact that she never has demanded any interest upon it; that this debt which was payable upon demand, the time of its maturity not postponed, payable upon demand, she not only never demanded the return of the money, but she never demanded any return of the interest, to that, I repeat, you will accord such weight as you think it is entitled to upon the pivotal proposition which I have two or three times stated: did this company receive this money as hers, or did they receive it as money either belonging to or under the control of the husband?

In further support of that contention, the defendant has introduced evidence tending to show, to which you will accord such weight as you think it is entitled to, that this company was abundantly able to pay its debt. That if this was a debt, the defendant's contention is, if this was a debt, there was no reason why the company

should not repay it so far as its ability to pay is concerned.

[Another feature in the case to which you will give such weight as you think it is entitled to, is the rule that the law looks with scrutiny, reasonably close scrutiny on every claim which is not promptly prosecuted, upon any claim which is called a stale claim, and if the evidence supports the proposition that no claim was ever made upon this account from July 22, 1905, to July 19, 1910, a matter of five years—where claims are allowed to lie unpursued, unprosecuted for a term of five years, the inquiry naturally arises to the mind: Why was this claim allowed to remain, lie by, unpursued, for five years? And to that circumstance you will accord such weight as in your good judgment you think it is entitled to.] [15.]

[The defendant further contends and points you to the fact that when this money was received by the company, they issued no obligation to her. She received no obligation, or, as previously stated, they issued an obligation to the husband in the shape of a stock certificate. You will accord to that such weight as you think it is entitled to.] [16.]

The defendant further calls your attention to the fact, if it be a fact, if the evidence supports the proposition, that this lady was more or less cognizant that the financial condition of this corporation, its balance sheets— [some testimony has been introduced tending to show that she was present or marked present in the minute book at two of the stockholders' meetings when a balance sheet of the affairs of the company was produced. That balance sheet, as you know, is a list of the assets—when you make a balance sheet out you put on the one side a list of the assets and on the other a list of the debts— and that this debt never appeared on that side of the account. Now, if she did see that balance sheet and saw that her debt was not there, as an obligation of the company, if that took place, if you infer that took place

from the fact that she was present at these stock-holders' meetings, that balance sheets were produced, if that took place, then it gives rise to the very significant inquiry, If she saw a list of the debts of this company and saw that she was not included, the natural inclination would be to speak up, "The list is not correct, you have omitted my claim," and so on.] [17.]

Now, from all of these circumstances, and any other of the evidence which you think throws light on the case, you will apply that evidence to the solution of the question—the pivotal question between these parties, the pivotal question, which I repeat again: Did this company receive this money as hers? If they did there was an implied promise to repay it. On the other hand, if they received the money as either belonging to or under the control of the husband, if they received it as his, then there is no implied promise to pay it to her.

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1–7) rulings on evidence, quoting the bill of exceptions, and (12–17) portions of charge as above, quoting them.

*William Taylor*, with him *Dilworth P. Hibberd*, for appellant.—The company could not credit the plaintiff's money to her husband without her consent: Chambers v. Marks, 25 Pa. 296.

It was error to strike out plaintiff's testimony: Thomas v. Maddan, 50 Pa. 261; Rosenagle v. Handley, 151 Pa. 107.

*O. B. Dickinson*, for appellee, cited as to the wife's evidence: Pleasanton v. Nutt, 115 Pa. 266; Norbeck v. Davis, 157 Pa. 399; Johnson v. Watson, 157 Pa. 454; Evans v. Evans, 155 Pa. 572; Saylor v. Walter, 30 Pa. Superior Ct. 370.

OPINION BY RICE, P. J., April 20, 1914:

The plaintiff alleged in her statement of claim that she loaned the defendant $1,000, payable on demand. By amendment a claim for money had and received was added. The defendant pleaded the general issue.

On the trial the plaintiff put in evidence a check for $1,000 drawn by J. N. M. Shimer to the plaintiff's order, indorsed by her to the order of the defendant, and indorsed by C. R. H. Cunningham, treasurer of the company, which check, thus indorsed, was deposited in bank to the credit of the company and was paid. This alone did not establish the plaintiff's right to recover. But she testified to the effect that she borrowed $1,000 from J. N. M. Shimer, her father, giving him her bond therefor, and that thereupon he gave her this - check which, after indorsing it, she handed to C. R. H. Cunningham, the treasurer of the company, who was her husband, and that she owed the company nothing. This, in brief, was the plaintiff's evidence as it stood when the case was submitted to the jury. On the other hand, the defendant alleged and gave evidence tending to show that it received the money, not as a loan, but in part payment of shares of capital stock of the company for which C. R. H. Cunningham subscribed, and that a few months later when the balance of the subscription was paid, a certificate for these shares was issued to him upon which he drew dividends for several years.

It is thus seen that the pivotal question in the case was, whether the company received the money as the plaintiff's. This question was submitted to the jury with the instruction that if they found the company so received it, there was an implied promise to repay it and the plaintiff was entitled to recover, but if they found that the company received it as either belonging to or under the control of the husband—if the company received it as his—then there was no implied promise to repay it to her, and the verdict should be for the

defendant. The plaintiff, certainly, has no just ground for complaint that the question was not determined by the court as a matter of law but was submitted to the jury.

Nor was there any error in the manner of its submission. Amongst the negative facts, of which there was evidence, and which were referred to in the charge of the court as tending to give probability to the defendant's contention are these: that the plaintiff neither received nor asked for any obligation for or other acknowledgment of the alleged debt; that she neither received nor demanded interest, although she knew from the receipt of very large dividends on her own stock through several years that the company was well able to pay; that balance sheets showing the indebtedness of the company, and to whom owing, but omitting her name as a creditor, were from time to time presented and read at meetings of the stockholders at which she was present, and no question was raised by her as to the omission; that no demand was made by her on the company or notice given by her of the claim until suit brought, which was about five years after the date of the alleged loan. Neither in his general charge nor in his answers to the defendant's points did the trial judge treat any one of these facts, or all of them together, as conclusive against the plaintiff's claim or use language which reasonably could be so interpreted by the jury. They were pertinent circumstances, especially in view of the meager and uncertain evidence to support the inference that the transaction was a loan by the plaintiff to the company. Unexplained, the plaintiff's evidence to which we have alluded would, perhaps, warrant that inference, but when it appeared that her husband was a subscriber to the stock of the company and that the proceeds of the check were accepted and applied by the company in part payment of his subscription, it became just as reasonable to infer that the plaintiff indorsed the check to the company and put it in her husband's hands for that very purpose. It has

been decided repeatedly that it is often permissible, and sometimes desirable, for the judge in his charge to express an opinion upon the facts, provided he does this fairly and does not give a binding direction. Upon the same principle, it is permissible and sometimes advisable for the judge to marshal and call to the jury's attention and consideration the pertinent circumstances, whether of an affirmative or a negative character, which, though not conclusive, tend to lend probability to the one side and the other of the main issue, and to point out to the jury the true bearing and significance of such circumstances. If he does this fairly and without infringing upon the jury's province to decide the main issue, as well as all subordinate questions of fact (as was done here), it is not ground for reversal that the judge's opinion as to the weight of the evidence is thereby conveyed to the jury. Viewing the assignments of error to the charge and to the answers to points in the light of these general principles and the evidence, we conclude that none of them is sustained.

The fourth assignment of error is to the admission of the testimony of Mr. Bloodsworth, an officer of the company who had charge of its books of account, that the check for $1,000 was entered by him on the cash book of the company on July 29, 1905.

The fact that the company got the check and its proceeds was essential to the plaintiff's case, and the entire effect of the specific ruling embraced in this assignment, was to permit the officer who kept the books to testify as to the date. We see no valid objection to permitting him to testify to this fact, even though he refreshed his recollection by referring to entries he had made in the defendant's books. It is true, counsel for plaintiff did make a general objection that the entries in the defendant's books could not affect his client, and this objection would have been well taken, if it were undisputed that the check was delivered to, and accepted by, the company as a loan, through an officer lawfully author-

ized to borrow money on its behalf. Of course, in such case, the plaintiff would not be bound to see to the application of the money, and therefore could not be affected by the acts of the company in that regard. But whether the check was delivered to and accepted by the company as a loan was the very question at issue and in that view we cannot say that the evidence referred to in the fourth, fifth and sixth assignments of error was incompetent. The idea was thus expressed by the court in overruling the objection: "It does present this view to me as a contemporaneous act in connection with this check. You show a check made payable to the order of the company. She says she didn't owe the money. She puts that check in the hands of her husband, who becomes her messenger to the company. Now the act of the company in receiving that check from her messenger it seems to me to be an evidential fact for the jury to pass on—to consider. It seems to me we will have to overrule your objection unless you have something further to say."

It is to be observed further with regard to the fifth and sixth assignments of error that the admissibility of the defendant's books was not brought directly in question. On the contrary, immediately before the rulings therein referred to, when the witness was testifying in elucidation and explanation of certain things that appeared in the books, the learned counsel said: "I have no objection to these books, just what they show; but a calculation is not evidence." Again, when the defendant's counsel formally offered the books in evidence no objection was made. In view of what occurred on the trial the plaintiff is not in position to question the admission of the books in evidence or the admissibility of the testimony of the officer who made the entries singling out and explaining for the convenience of the court and jury those that were pertinent. These assignments are not sustained.

In addition to giving the testimony to which reference

has been made, the plaintiff was permitted, under objection and exception, to testify to conversations between her and her husband previous to, in connection with and after her giving to him the check. The substance of her testimony on this subject was, that her husband told her the company was short of money and asked her for the loan of $1,000 to the company; that thereupon she got the check from her father, as above stated, and handed it to her husband "acting as treasurer of the Crucible Steel Casting Company"; that her husband said: "as soon as they got on their feet I would get the money back"; and that later in the year she spoke to him about it, whereupon, "He said they were building, they were getting lots of orders, I would soon have my money back, they would soon pay it back, they were getting on their feet." After it had been shown by the defendant that the check, which she says was given to her husband to be turned over as a loan by her to the company, was used by her husband and accepted by the company for his own benefit, that is, in part payment for shares of capital stock for which he had subscribed, the court, on the defendant's motion, struck out the plaintiff's testimony as to these conversations. This ruling is the subject of the seventh assignment of error. It raises a question of much importance in the case and of considerable general importance.

With some exceptions not necessary to be noticed here, the common-law rule as to the incompetency of husband and wife to testify against each other has been preserved in the legislation of this commonwealth and is thus expressed in sec. 5 of the Act of May 23, 1887, P. L. 158.

"(b) Nor shall either husband or wife be competent or permitted to testify to confidential communications made by one to the other, unless this privilege be waived upon the trial.

"(c) Nor shall husband and wife be competent or permitted to testify against each other, except," etc.

However it may be elsewhere, in Pennsylvania the rule is not confined strictly to cases in which the marital relation exists between the person offered as a witness and a party to the record. It is true in Musser v. Gardner, 66 Pa. 242, which was replevin by a feme sole trader for goods which the defendant had purchased from her husband, it was held that the plaintiff was competent to testify in her own behalf under the act of April 15, 1869, P. L. 30. Chief Justice THOMPSON, who delivered the opinion of the court, said:

"She was on record as a feme sole, so far as the right of action was concerned, and her testimony went only to sustain title to the property in question. The husband was no party, and that he might possibly be called on at some time or other to answer on an implied warranty of title to the property he had sold and now claimed by the wife, was too remote and contingent to bring her within the prohibition of the statute from testifying against her husband. In fact, a decision in this issue in her favor would by no means be necessarily conclusive in a contest between her husband and the defendant on the implied warranty."

But in the later case of Pleasanton v. Nutt, 115 Pa. 266, which also was an action of replevin by a married woman, the plaintiff was held incompetent under these circumstances: The defendant pleaded specially that she, the defendant, acquired title by purchase from the plaintiff's husband, and that he was at the time of the purchase owner of the property. The plaintiff was permitted to testify, under objection and exception, that the title was in her under a gift from her husband before the alleged sale to the defendant. It was held upon writ of error that the objection should have been sustained. Justice STERRETT said:

"She was incompetent to thus prove title in herself, because in so doing she was testifying against the interest of her husband. While he was not a party to the record, he was nevertheless interested in the result, in

that his wife's testimony, to the effect that the furniture was not his but hers, at the time he sold it to defendant below, tended to make him liable for breach of his implied warranty of title in the sale of the furniture as his own."

In that case, it is true, the question arose on the pleadings, but there can be no doubt that the controlling principle is the same where it arises on the real issue as presented by the testimony, for Justice STERRETT said: "If she had testified without objection, and in the course of her examination her incompetency had been disclosed, defendant would have had a right to demand that her testimony be stricken out." We refer also as to the question of practice to Saylor v. Walter, 30 Pa. Superior Ct. 370. Here the objection was made in limine, and was renewed when it appeared that the plaintiff's testimony was in antagonism to her husband's interest. Therefore it cannot be insisted that the defendant waived it. Allusion is made in the argument of appellee's counsel to the fact that the affidavit of defense was made on behalf of the company by the plaintiff's husband and that this clearly shows that he was on the side of the defendant in the controversy, but as the affidavit was not in evidence, or strictly part of the pleadings, we leave this out of consideration. It is proper, however, to notice, that the plaintiff did not call her husband as a witness and when defendant's counsel proposed to examine him, her objection to his competency was sustained. There is, therefore, no ground for implication from his silence, that her testimony was not in antagonism to him, as it plainly appeared to be when the defense was disclosed on the trial. It appeared then, if it had not before, that her testimony tended to show that her husband was guilty of fraud, not only upon her but upon the company, in misappropriating the check to his own benefit, and we cannot agree with counsel that if that were the fact, his liability over to the company would be remote and speculative.

When it is considered further, that the fact of his fraudulent misappropriation of the check was to be proved by conversations between him and his wife, the conclusion is irresistible that in giving such testimony she was testifying against her husband within the meaning of the words of the statute, as well as within the principle of public policy, upon which the rule is founded. It follows that the court did not commit error in striking out the testimony or in stating the reason for so doing in plain and vigorous language, though in the presence of the jury.

The remaining assignments of error are covered by what has already been said and need not be separately discussed.

All the assignments of error are overruled and the judgment is affirmed.