IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

---

## NORTHERN DISTRICT—SUNBURY 1864.

---

## Rhodes *versus* The Commonwealth.

*Right of jury to fix by their verdict the degree of murder, on trial for that crime.—Rule as to extent of inquiry on subjects introduced on cross-examination.*

1. On an indictment for murder which did not charge the offence to have been committed wilfully, deliberately, and premeditatedly, or by means of poison, or by lying in wait, or in the perpetration of, or attempt to perpetrate arson, rape, robbery or burglary, it was held error in the court to charge the jury: "If you find the defendant guilty, your verdict must state Guilty of murder in the first degree in manner and form as he stands indicted. If not guilty, your verdict will simply be Not guilty." The duty of fixing the degree of murder in such cases belongs exclusively to the jury.

2. Although the rules of evidence require that the inquiry on subjects introduced on cross-examination should be restricted to the extent of the cross-examination, and that no party should be allowed by his own declarations to make evidence for himself; they are not to be strained so as to dissever occurrences clearly allied to each other, or to exclude declarations that are fairly part of the *res gestæ.*

ERROR to the Oyer and Terminer of *Northumberland county.*

To January Sessions 1865, Edward B. Rhodes was indicted for the murder of Elizabeth Chamberlain, was tried, and under the ruling of the court below convicted of murder in the first degree, and sentenced to be hanged.

This writ was thereupon sued out, and the record removed into this court, where the following errors were assigned by the counsel for the prisoner :—

(396)

[Rhodes v. Commonwealth.]

1. The Commonwealth's counsel having asked the witness, Constable Neihoff, who had a warrant to search the prisoner's house, and who also searched his person, whether he did not find bank notes upon the person of the defendant at the time of the search, and whether Lewis Chamberlain, the husband of deceased, did not claim the bank notes so found as his; and also, whether he did not claim that, as some of the money that had belonged to his wife; and the witness having answered "that he did find $45 or $55 upon the person of the defendant, and that Lewis Chamberlain said he could not tell if that was his money," &c., the defendant proposed to ask the witness "where did the defendant, at the time you found the $45 upon him, say that he got that money, or what account, if any, did he give of the money?" To this the Commonwealth objected, because the defendant's declarations cannot be given in evidence in his own favour.

PER CURIAM.—"No inquiry was made by the counsel of the Commonwealth of the witness of anything said by Edward Rhodes, and the court are of the opinion that inasmuch as no inquiry was made by them, his declarations are not evidence in his favour."

2. The court erred in instructing the jury that "the defendant remained at Caleb Chamberlain's until 9 o'clock on Saturday morning." That "he was next seen by Miles Farnsworth, near his father's barn, one-fourth of a mile from Caleb Chamberlain's. Rhodes went to this boy and asked him who lived on the next farm. He was told that Mr. Hummel lived on the next farm. He said no more, and then left and went in the direction of Lewis Chamberlain's. This boy stated he saw him between 9 and 10 o'clock in the morning. He was then 400 or 450 perches from Lewis Chamberlain's, and he went in that direction. He was not going in the direction of Shamokintown, where, if the testimony is believed, he wished to be by dinnertime." And

3. The court erred in charging the jury as follows, viz.: "If you find him (the defendant) guilty, your verdict must state Guilty of murder in the first degree, in manner and form as he stands indicted. If not guilty, your verdict will simply be Not guilty."

*J. W. Comly, J. B. Packer,* and *S. P. Wolverton,* for plaintiff in error.

*S. Malich,* District Attorney, with whom were *William C. Lawson, G. W. Zigler,* and *W. M. Rockafeller,* for the Commonwealth.

The opinion of the court was delivered by

[Rhodes *v.* Commonwealth.]

WOODWARD, C. J.—In that part of the charge which is set forth in the third assignment, we think the learned judge fell into manifest error. His language was: "If you find the defendant guilty, your verdict must state Guilty of murder in the first degree, in the manner and form as he stands indicted. If not guilty, your verdict will simply be Not guilty." The Act of Assembly under which the prosecution was conducted declares that "all murder which shall be perpetrated by means of poison or by lying in wait, or by any other kind of wilful, deliberate, and premeditated killing, or which shall be committed in the perpetration of, or attempt to perpetrate, any arson, rape, robbery, or burglary, shall be deemed murder of the first degree; and all other kinds of murder shall be deemed murder of the second degree; and the jury before whom any person indicted for murder shall be tried, shall, if they find such person guilty thereof, ascertain in their verdict whether it be murder in the first or second degree; but if such person shall be convicted by confession, the court shall proceed by examination of witnesses to determine the degree of the crime, and to give sentence accordingly."

The statute created a distinction, unknown to the common law, between murder in the first and second degree, and by very precise words made it the exclusive right and duty of the jury to ascertain the degree when the conviction resulted from a trial, and of the court to ascertain it when the conviction should be by confession; yet the judge assumed the province of the jury and ascertained the degree in this instance, though this was a case of conviction by trial and not by confession. Nothing less can be made out of his words, " if you find the defendant guilty, your verdict *must* state Guilty of murder in the first degree;" was that leaving the degree to the jury to find? Most clearly not. It excluded all chance of deliberation on the degree, and left to them only the question of guilty or not guilty.

It is in vain to argue that the judge was more competent to fix the degree than the jury, or that the circumstances proved the crime to be murder of the first degree, if murder at all; for the statute is imperative that commits the degree to the jury. It was proper for the judge to advise them of the distinction between degrees, to apply the evidence, and to instruct them to which of these degrees it pointed; but to tell them they *must* find the first degree, was to withdraw the point from the jury and decide it himself.

If the indictment had laid the offence as committed by poison, or lying in wait, or any of the other means enumerated in the statute, there would have been more reason for the direction, though even then we do not say such a direction could be sustained; but the indictment alleged none of the categories of the

[Rhodes v. Commonwealth.]

statute, and simply charged that the defendant did "feloniously, wilfully, and of his malice aforethought, kill and murder Elizabeth Chamberlain." A conviction in the manner and form of such an indictment clearly demanded an ascertainment of the degree by the jury. It was argued that it would have been error for the court to instruct the jury upon the evidence that the offence was murder in the second degree. Undoubtedly it would have been, and it was not error to instruct them that it was murder in the first degree, but it is one thing to instruct a jury upon the legal effect of evidence, and quite another thing to compel them to find a fact in a particular way. And it is to compel a jury, when, instead of placing the alternative degrees of murder before them, the judge decides that they must find the first degree or acquit. Under proper instructions from the bench it is not only the right of the jury to ascertain the degree, but it is the right of the accused to have it ascertained by them, and a judge takes away one of the statutory rights of the accused when he undertakes to ascertain it.

No doubt cases of murder of the first degree have been found in the second, but this must have been anticipated when the statute was framed, and has certainly been observed under its operation, and yet it has remained on our statute-book since 1794 unaltered in this regard. Possibly the very distinction of degrees was invented to relieve such jurymen's consciences as should be found more tender on the subject of capital punishment, than on their proper duties under evidence. Many men have probably been convicted of murder in the second degree, who, really guilty of the higher crime, would have escaped punishment altogether but for this distinction in degrees so carefully committed by the statute to juries.

Though a robbery was committed in the house of Mr. Chamberlain the day his wife came to her death, it is not alleged, either in the indictment or the argument, nor is it found as a fact in the cause, that she was killed in the perpetration of, or the attempt to perpetrate, that robbery. Nor is it possible that it could have been, for her body was found in the woods sixty-nine and a half rods from the house, and her tracks, the only ones that were visible, were plainly identified from the house to the place where she lay. There was therefore no such connection between the two crimes as to bring them within the category of the statute, and the Commonwealth, whilst holding the prisoner responsible for both crimes, admits the murder was not committed in the perpetration of the robbery. If it had been, we should doubt, as before intimated, the part of the charge we are considering; but seeing that the offence charged and proved was not of that character, it seems very plain to us that the judgment ought to be reversed. It cannot be considered an unimportant

[Rhodes *v.* Commonwealth.]

error, for nothing which the statute enjoins can be unimportant in a capital case. Had the jury been put to the ascertainment of the degree, who can say they would not have doubted, or that a single juror would not have doubted? To argue that under the evidence a juror had no right to doubt, proper enough while the case was before the jury, would now be to argue against their right to decide the question, and that would be equivalent to a repeal of this part of the statute. This possible doubt of the jury was one of the prisoner's rights, which the court should not have taken from him.

We are of the opinion that there was error also in rejecting the evidence in the first bill of exception. The guilt of the defendant, and, indeed, the fact of a murder, depended on circumstantial evidence. There was no doubt that Mrs. Chamberlain was killed by a gunshot wound in the head, but whether it was inflicted by another or herself—and if by another whether by the defendant, and if by herself whether by design or accident—were points that depended for their ascertainment upon the careful weighing and comparison of a great number of circumstances. The robbery of the husband's trunk in the house the same afternoon of the death, was one of the most material facts, and if the defendant could be convicted of that it would go far to establish his guilt of the higher crime. Hence the search of the prisoner's house and person, which the Commonwealth instituted, to find any of the money which had been abstracted from Chamberlain's trunk. Constable Neihoff, who conducted the search, was called by the defence, and swore that he made a thorough search of Rhodes's house and person, without finding anything that Chamberlain claimed. On his cross-examination by the Commonwealth he said he found $45 or $55 on the person of the prisoner, and that Chamberlain said he could not tell if that was his money—he did not say it was money that had belonged to his wife. The defence then proposed to ask the witness " where did the defendant, at the time you found the $45 upon him, say that he got that money, or what account, if any, did he give of the money ?" The court overruled the question on two grounds : 1st. That no inquiry was made by the counsel of the Commonwealth of the witness of anything said by Rhodes; and 2d. That his declarations were not evidence in his favour.

As a general rule, both of the court's positions were correct; the inquiry on subjects introduced by the cross-examination must be limited by the extent of the examination, and a party cannot make evidence for himself by proving his own declarations, but all rules of evidence must have a natural and reasonable application. The defendant, arrested unexpectedly whilst attending the funeral of the deceased, and subjected to a thorough search both of his premises and person, is found in possession of a sum of

[Rhodes v. Commonwealth.]

money rather unusual for a man in his circumstances to have about him. This fact is brought out by the cross-examination on the part of the Commonwealth, and although the prosecutor could not identify the money, neither did he disown it. Now what is more natural, in such circumstances, than the spontaneous explanation of the defendant as to where he got that money? Had he refused to explain, it would have been evidence against him, for, according to all the authorities, recent possession of stolen goods, unexplained, is evidence of the larceny, and though the money was not identified in this instance, there was enough in the circumstances to awaken suspicion and to prejudice the jury against the defendant, and his failure to explain would have strengthened this prejudice. But he did explain, and thus he furnished the Commonwealth with another test of his honesty. If his explanation were false it could have been shown with condemning force, if true he was entitled to the benefit of it. A search is one thing, but it is made up of several particulars, and when it has been instituted by the prosecution and conducted by a public officer, the spontaneous explanations of the prisoner made on the spot, in the very act of being searched, and relating directly to what is found in his pockets, are just as much part and parcel of the search as the things found. If the Commonwealth would have the fact in evidence that the constable found the money, they were bound to take it in connection with the instant explanation of the prisoner. It is unnatural to dissever occurrences so closely allied. The declaration was part of the *res gestæ*. The Commonwealth cannot take one part of the fact and reject the other, but must have both parts or neither. This principle has been often discussed in our own authorities: Tompkins v. Saltmarsh, 14 S. & R. 275; McClenken v. McMillen, 3 Barr 367; Potts v. Everhart, 2 Casey 498; Cattison v. Cattison, 10 Harris 276.

We think the question should have been admitted; seeing nothing else in the errors assigned to call for our interference, we forbear any further discussion of the case.

> The judgment is reversed, and a *venire facias de novo* is awarded.