# Commonwealth *v.* Chapler, Appellant.

*Criminal law—Murder—Degree of crime—Use of deadly weapon—Presumptions—Charge—Answers to points.*

1. Conviction of murder in the first degree can be justified only as the commonwealth establishes by evidence a specific intent to take life; and while the law regards the circumstance that a deadly weapon was used as evidence that a specific intent to kill existed, it is never so far conclusive as to such fact that the trial court may pronounce the intent to take life established as a matter of law. It is always for the jury to determine the intent by their own consideration of the evidence.

2. The presumption from the use of a deadly weapon rises no higher than murder in the second degree. Under no circumstances, whether the party charged submits or does not submit, does the presumption rise higher.

3. On the trial of an indictment for murder it is reversible error for the court to instruct the jury that they are bound to find a verdict of murder of the first degree. It is not only the right of the jury to ascertain the degree, but it is the right of the accused to have it ascertained by the jury, and a judge takes away one of the statutory rights of the accused when he undertakes to ascertain it himself.

Argued May 2, 1910. Appeal, No. 106, Oct. T., 1910, by defendant, from judgment of O. & T. Cambria Co., June T., 1909, No. 14, on verdict of guilty of murder of first degree in case of Commonwealth v. Joseph Chapler. Before Fell, C. J., Brown, Potter, Elkin and Stewart, JJ. Reversed.

Indictment for murder. Before O'Connor, P. J.

The opinion of the Supreme Court states the case.

The defendant presented these points:

1. Murder in the first degree is limited to willful, deliberate and premeditated killing, and the presumption from the use of a deadly weapon rises no higher than murder in the second degree. *Answer:* That may be true where the defendant submits and no testimony is offered, but we have just said to you that the essential difference between murder in the first degree and murder in the

second degree is the intent to kill, and the jury may infer that intent from the use of a deadly weapon, where it was directed at a vital part of the body. With that modification we affirm the point. [1]

5. If you believe that the defendant struck the blow that killed Albert Deering, under a reasonable, although it might have been a mistaken apprehension of danger to life or of great bodily harm, you will acquit him. *Answer:* If the evidence satisfies the jury that the defendant had reason to apprehend an immediate attack on him and under the belief that the deceased was about to inflict upon him great bodily harm unless he struck the blow which caused Albert Deering's death your verdict should be not guilty. We have said to you that we could not find from the testimony in the case that which we feel measured up to the standard of self-defense. If there be that in the case which would warrant the conclusion in your mind that defendant was in such imminent danger and could not retreat and therefore was obliged to inflict the blow to protect his life or limb, or protect him from great bodily harm, then he would not be guilty of any offense. With this modification we affirm the point. [2]

The court charged in part as follows:

[If you find from the evidence in the case the defendant had malice in his heart toward Albert Deering at the time he went to where he was, and used such a knife as described in the testimony in this case, striking at the throat of Albert Deering and severing the jugular vein, unless the defendant would excuse his act, you would not only have the right but you would be obliged to fix the degree at what the law defines it to be.] [3]

[When, with a knife of this character he inflicted such a wound as the body of the decedent shows, under the circumstances testified to, the jury would have the right to infer that he intended to take life; in fact, it is the duty of the jury to so infer.] [4]

[There is no evidence of his intent, except from his own testimony or declaration that he did not intend to kill, but then he was bound to know the consequences of his act when he used a deadly weapon directed at a vital part of the body of the deceased.  If he had such recklessness of disposition, recklessness of the consequences of his act; in other words, did not care whether he killed or not, that is sufficient without any well-defined intent to take life, because it takes the place of a well-defined intent.  One who would discharge a revolver upon a street and into a crowd, without any special grievance against anyone, and kill one of the crowd, would be guilty of murder in the first degree, because of the recklessness of disposition and the disregard for the consequences of his act, and this the law says, takes the place of the well-defined intent to take life, although he may have had no special malice against any person.] [5]

Verdict of guilty of murder in the first degree.  Defendant appealed.

*Errors assigned* were (1–5) above instructions, quoting them.

*Morgan W. Evans*, with him *John H. McCann*, for appellant.—The trial judge invaded the province of the jury: Rhodes v. Com., 48 Pa. 396; Pannell v. Com., 86 Pa. 260; Com. v. Onofri, 18 Phila. 436; Com. v. Drum, 58 Pa. 9; Com. v. Greene, 227 Pa. 86.

*J. W. Leech*, with him *D. P. Weimer*, for appellee, cited: Com. v. McGowan, 189 Pa. 641; Com. v. Mika, 171 Pa. 273; Com. v. Drum, 58 Pa. 9; Com. v. Van Horn, 188 Pa. 143.

OPINION BY MR. JUSTICE STEWART, July 1, 1910:

The appellant stands convicted of murder in the first degree.  If the verdict which so condemned him was the free expression of a conclusion reached by the jury upon

review of the evidence in the case, upon proper instructions as to the law, the verdict ought not to be disturbed, for unquestionably from the evidence the jury would have been fully warranted in reaching such conclusion; that is to say, they could have found in the evidence every ingredient necessary to conviction for the highest degree of guilt. If, on the other hand, however, the verdict was reached by the jury, under instructions from the court as to their duty which prevented consideration of those things which necessarily enter into the determination of the degree of guilt, then it ought not to be allowed to stand. Appellant killed his victim by suddenly stabbing him in the neck, thereby severing the jugular vein, from which wound death very soon resulted. Assuming that the evidence was sufficient to establish the offense of murder—and that the jury was so convinced—it still remained for the jury to determine the degree. Was it murder in the first or second degree? Conviction for the higher degree could be justified only as the commonwealth had established by evidence a specific intent on the part of the accused to take life. Whether it had done so was a question for the jury alone to decide. No presumption of law carried the offense beyond the second degree. The law regards the circumstance that a deadly weapon was used, as evidence that a specific intent to kill existed; but it is never so far conclusive as to such fact, that the trial court may pronounce it established as a matter of law. The jury may infer the intent from the fact, but the court may not. When the law says that the jury may infer a specific intent to take life, from the use of a deadly weapon, all it means is that such circumstance is evidence of such intent. It does not mean that a presumption of murder in the first degree arises upon such fact being shown. The fact is to be considered in the determination of the question; and its convincing force is a relative matter, depending upon circumstances, and the evidence, if any, offered to countervail it. The law will sustain a finding of intent from the single fact that a

deadly instrument was used; nevertheless, it is in every case for the jury to derive their own conclusion as to the intent, from the circumstances which the case discloses. To meet this feature of the case, the court was asked to instruct the jury as follows: "Murder in the first degree is limited to willful, deliberate, and premeditated killing, and the presumption from the use of a deadly weapon rises no higher than murder in the second degree." The point was a correct expression of the law, and should have been unqualifiedly affirmed. The answer was as follows: "That may be true where the defendant submits and no testimony is offered, but we have just said to you that the essential difference between murder in the first degree and murder in the second degree, is the intent to kill, and the jury may infer that intent from the use of the deadly weapon, where it was directed at a vital part of the body. With that modification we affirm the point." The qualification was a virtual denial of the point, and amounted to an instruction that the presumption yielded when it was shown that a deadly weapon was used, directed at a vital part. This, as we have said, is not the law. Under no circumstances, whether the party charged submits or does not submit, does the presumption rise higher than the second degree. As was said in the recent case of Com. v. Greene, 227 Pa. 86, whenever the commonwealth asks for a conviction of murder in the first degree, it must overcome the presumption of second degree after having established a felonious homicide, even if committed by the use of a deadly weapon upon a vital part of the body of the decedent. In that case the party charged offered no evidence whatever. Here the defendant did not submit, and yet the only inference that the jury could draw from the answer, must have been that he had submitted, and because he had submitted, he was not entitled to the instruction asked for. But the mistake did not stop here. The general charge leaves us in no doubt as to what the trial judge meant by his answer to the point. It makes

it certain that we have given it no other meaning, and ascribed no other effect or purpose than he intended. What he intended the jury to understand was, that the fact that defendant used a deadly weapon was conclusive of the question of degree of guilt. In speaking to this precise point he uses this language, "There is no evidence in this case of what was in the mind of the defendant at the time that he inflicted the fatal blow, but, as we have just read from the charge of the court in the case of Com. v. Drum, 58 Pa. 9, the jury have the right to infer that the defendant intended the consequences of his act. When with a knife of this character he inflicted such a wound as the body of the deceased showed, under the circumstances testified to, the jury would have the right to infer that he intended to take life; in fact it is the duty of the jury to so infer. There is no evidence of his intent, except from his own testimony or declaration that he did not intend to kill, but then he was bound to know the consequences of his act when he used a deadly weapon directed at a vital part of the body of the deceased." Again he says, "If you find from the evidence in the case the defendant had malice in his heart toward Albert Deering, at the time he went to where he was, and used such a knife as described in the testimony of this case, striking at the throat of Albert Deering and severing the jugular vein, unless the defendant would excuse his act, you would not only have the right but you would be obliged to fix the degree at what the law defines it to be." The manifest error here cannot be overlooked. Defendant had gone upon the stand and given his narrative of the occurrence, distinctively disclaiming a purpose to kill; the witnesses for the commonwealth had detailed the circumstances of the occurrence and the manner in which the blow was delivered. The instructions virtually withdrew all of this testimony from the consideration of the jury, and left them to find the intent from the fact that a deadly weapon had been used, and from that alone. Indeed even that was not even

accorded them as a prerogative of their own, but they were instructed that they were obliged to so find. This was nothing less than a binding instruction and it was an erroneous instruction as well. The language of WOODWARD, J., in Rhodes v. Com., 48 Pa. 396, is here most appropriate. He says in that case, "It was argued that it would have been error for the court to instruct the jury that the offense was murder in the first degree. Undoubtedly, it would have been, and it was not error to instruct them that it was murder in the first degree, but it is one thing to instruct the jury upon the legal effect of evidence, and quite another thing to compel them to find a fact in a particular way. And it is to compel a jury, when, instead of placing the alternative degrees of murder before them, the judge decides that they must find the first degree or acquit. Under proper instructions from the bench it is not only the right of the jury to ascertain the degree but it is the right of the accused to have it ascertained by them, and a judge takes away one of the statutory rights of the accused when he undertakes to ascertain it." In what we have said we have considered the only assignments that were pressed on the argument of the case, Nos. 1 to 5, inclusive. These are sustained, and this makes reference to the others unnecessary. The judgment is reversed and venire facias de novo awarded.