## Commonwealth *v.* Green, Appellant.

Argued November 26, 1928. Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ.

*Glenn C. Mead,* with him *Morton Witkin,* for appellant.—In a capital case it will not be assumed that the jury understood inadvertencies in the charge: Com. v. Frucci, 216 Pa. 84.

The presumption from the use of a deadly weapon rises no higher than murder in the second degree: Com. v. Onofri, 18 Phila. 436; Com. v. Chapler, 228 Pa. 630.

The mind must have become fully conscious of its own design to kill: Com. v. Morgenthau, 249 Pa. 139; Com. v. Drum, 58 Pa. 9; Com. v. Daynarowicz, 275 Pa. 235.

*Charles C. Gordon,* Assistant District Attorney, with him *John Monaghan,* District Attorney, for appellee.

OPINION BY MR. JUSTICE SCHAFFER, January 7, 1929:

Defendant, found guilty of murder of the first degree, with punishment fixed at life imprisonment, complains that in his trial certain errors were committed and in consequence thereof asks that he be afforded the opportunity to face another jury. He sums up what he alleges to be the harmful matters in three categories in his statement of the questions involved: (1) that he was prejudiced by a question asked him by the trial judge; (2) that the court's charge was erroneous in assuming that the killing was unlawful; in imputing violence to him; in magnifying the case of the Commonwealth and minimizing the defense and in refusing to exclude murder of the first degree from the jury's consideration; and (3) that he was not granted a new trial.

The jury could have found from the disinterested testimony of observing witnesses that defendant, with cool

deliberation when eight or ten feet distant from the deceased, fired the shot which struck him in the face, penetrated his brain and killed him.

The two parties to the tragedy, slayer and slain, were employed by a manufacturer of patent medicines, the former as a salesman, the latter as an advertiser of the business, costumed as though he were an American Indian. Appellant came to his employer's establishment about seven o'clock in the evening to collect money which he claimed to be due him and which was more than the manager of the business conceded he had earned. A dispute arose between them in which defendant used violent language to the manager and the latter went outside the building to get a policeman to remove him. The officer who was on the beat acted on the request and directed the defendant to leave the premises and to lay his demand before the Legal Aid Society. Defendant left the vicinity as ordered by the policeman, but something more than an hour later returned, truculently renewed the demand for his money, and was ordered out of the building by Simms, the deceased, who applied to him profane and opprobrious epithets. The defendant finally withdrew from the building, being led therefrom by Pitts, the proprietor of the establishment, who had him by the arm, and followed as far as the doorway by the deceased. The defendant, after leaving the building, proceeded along the pavement for about ten feet with his back to the deceased, suddenly turned, drew a revolver from his coat pocket, levelled it at his victim and shot him in the manner heretofore recited.

The defendant set up that there was a large crowd in front of the building when he came out of it which retarded his exit, that he was endeavoring to escape from the threatened violence of the deceased who had a knife in his hand, which the crowd prevented him from doing, and that he fired the shot in self-defense, not intending to kill his victim but to scare him. The other testimony and the circumstances convincingly show that no crowd

was present until after the shooting, that defendant was in no danger from the deceased, who had no weapon on his person except a closed knife in the pocket of an under coat which was inaccessible to him because of his outer clothing, and that the shooting was with a manifest intent to kill as shown by the deliberate firing of the bullet into the head of the deceased.

The defendant's explanation of why he had the loaded revolver in his pocket was an unconvincing one, and the trial judge's question which is complained of—"Where did you usually carry your gun?"—entirely proper under the circumstances. Defendant had said that he was carrying the revolver "this time" for the purpose of having it fixed, without satisfactory explanation, if this were so, as to why he carried it loaded. He also testified that he carried it for protection against robbers. It appeared that just before the shooting he had his hand in his right coat pocket; he admitted that he was carrying the revolver there, obviously the most accessible place in his clothing to quickly reach it. This, together with his testimony clearly indicating he had carried a revolver on other occasions, naturally led to the trial judge's inquiry as to whether that was the place he usually carried it and to his subsequent inquiries as to whether that is where he carried it when he went to have it fixed and as to whether he carried it in other pockets. All these inquiries were proper and pertinent. Those who carry concealed firearms in violation of law must expect, when they commit further crime by their use, that the fullest and most searching inquiry will be made concerning their reasons and intentions in carrying death-dealing weapons.

As to the complaints against the court's charge, they might all be summarily dismissed, as they are without merit. The court did not assume that the killing was unlawful in the sense that appellant argues, as a prejudgment against the claim of self-defense. What the court was pointing out was that homicide is justifiable

when life is taken by authority of law, as the penalty for murder of the first degree, and the language criticized, "If you find, as you will likely find in this case, that Simms' life was not taken by sanction of law," was used in that connection.

We can see nothing in the charge which imputed violence to the defendant beyond the violence he used in the killing. The court with entire propriety instructed that the defendant's duty was not to endeavor to force the payment of the money which he claimed to be due him by the use of violence but to resort to the orderly processes of the law to establish his right to be paid.

Under the fifth assignment it is argued that the following language of the court runs counter to the rule laid down in Com. v. Chapler, 228 Pa. 630, as to the presumption arising from the use of a deadly weapon: "Where a man uses a weapon which is not deadly, as, we will say, he uses a club or a stick or something else; one who uses a club or stick ordinarily does not intend death to ensue by the delivery of the blow. When a man uses a revolver, what are the chances? What is the thing that sends the missile speeding out of the muzzle of that revolver? What is in the brain of the man who fires it? Is he doing it so as to injure the man, to frighten the man, to defend himself; or is he doing it to kill him? If you find that the defendant, when he fired that revolver, only intended to inflict grievous bodily injury on the body of Simms, and had no purpose of taking his life, and you cannot infer that from the circumstances, that would be murder of the second degree." This language was entirely proper under the circumstances as they were shown by the testimony and does not violate the rule in the Chapler Case, however that rule be applied. When other parts of the charge are taken into account it will be seen that the court said in substance that the presumption from an unlawful killing arose only to second degree murder and that it was incumbent on the Commonwealth to establish the intent to kill in

order to constitute the crime of murder of the first degree. Indeed, at the conclusion of the charge, appellant's attorney said to the court: "Your honor has told the jury there is the presumption that this was a murder of the second degree; that it was the duty of the Commonwealth to raise it, and of the defendant to lower it," and asked the court to instruct that the degree of proof as between the Commonwealth and defendant was not the same.

It is also urged upon us that the court's instruction that "One who uses a deadly weapon upon another at some vital part, with the manifest intention to use it upon him, must, in the absence of qualifying facts, be presumed to know that his or her act must be intended to kill and to intend death," is erroneous under Com. v. Chapler, supra, and Com. v. Greene, 227 Pa. 86, which hold, so it is argued, that the presumption from the use of a deadly weapon rises no higher than murder in the second degree. When these cases are carefully studied and what was said in them is applied to the facts in each one we think they are not authority for the broad proposition that, in every instance, the slayer's use of a deadly weapon gives rise only to the presumption of second degree murder.

In the Greene Case, the trial court had before it the facts that at midnight a man and woman were quarreling at a street corner; pistol shots were heard and a man was seen pointing a revolver and shooting at an object under the awning of the store at the corner. A woman was found on the pavement under the awning who had been shot twice in the head and who died from these wounds. The defendant, tried for the crime, offered no evidence and was convicted of murder of the first degree. The court charged in substance that from the use of a deadly weapon upon a vital part of another the law raises the presumption of an intent to kill "and if he so does, it is on him to answer to the jury aught that he may have in extenuation or qualification to relieve him-

self from that presumption of murder of the first degree." Commenting upon this feature of the charge, we said: "The only inference to be drawn by the jury from this instruction was that if they found the prisoner had shot the deceased, the burden was upon him to relieve himself from *the law's presumption* that his offense was murder of the first degree" and we decided that this was error, that whenever the Commonwealth asks for conviction of murder of the first degree "it must overcome the presumption of second degree after having established a felonious homicide, even if committed by the use of a deadly weapon upon a vital part of the body of the deceased;......the jury were unmistakably told that *the law's presumption* was that he was guilty of murder of the first degree." The court was apparently considering the instruction complained of as in effect saying to the jury that murder by the use of a deadly weapon upon a vital part raised a *presumption of law* that the crime was first degree murder. This strictly speaking would be inaccurate because the presumption raised is not one of law but of fact. "Such a presumption [from the manner of the killing] is an inference of *fact* [not of law] to be drawn from all the circumstances of the particular case. Wherever the killing is with a deadly weapon, and there is evidence aliunde showing that this was intentionally, deliberately, and unjustifiably used, then the inference......is that of an intent to take life, and the case is murder in the first degree. The burden, however, of proving this is on the prosecution. Stripping the case of these incidents however, and supposing a malicious killing be proved, then the inference is of murder of the second degree": Wharton's Criminal Law, 11th ed., vol. 1, section 518. "On the other hand, when a person without authority, and with the appearance of deliberation, shoots another, we infer, as a presumption of fact (not of law) design. There is no petitio principii [begging of the question] on this. We do not say that the killing was designed because it

was designed. What we say is this: Taking aim at another with a gun, by a person without authority, and not in public war, and then firing, ordinarily implies an intent to kill;......it is incorrect, therefore, to tell a jury that malice, when the weapon is deadly, is a presumption of law. But while telling them that whether there is or is not malice, is a point to be determined by a scrutiny of all the facts in the case, it is proper to remind them that there are certain rules of probable reasoning which it is right for them to keep in view. And one of these rules is that when a responsible person, without authority and under such circumstances as indicate deliberation without apparent provocation or necessity, wounds another in a vital part with a deadly weapon, then malice is to be inferred": Wharton's Criminal Evidence, vol. 2, 10th ed., section 764. In Com. v. Chapler, 228 Pa. 630, where the killing was by a knife wound in the neck, it was said: "Conviction for the higher degree could be justified only as the Commonwealth had established by evidence a specific intent on the part of the accused to take life. Whether it had done so was a question for the jury alone to decide. *No presumption of law* carried the offense beyond the second degree. The law regards the circumstance that a deadly weapon was used, as evidence that a specific intent to kill existed; but it is never so far conclusive as to such fact, *that the trial court may pronounce it established as a matter of law.* The jury may infer the intent from the fact, but the court may not. When the law says that the jury may infer a specific intent to take life, from the use of a deadly weapon, all it means is that such circumstance is evidence of such intent. It does not mean that a presumption of murder in the first degree arises from such fact being shown. The fact is to be considered in the determination of the question; and its convincing force is a relative matter, depending upon circumstances, and the evidence, if any, offered to countervail it." In these two cases the court was speaking of presumption

of law, whereas the presumption from the use of a deadly weapon upon a vital part, as we have seen, is a presumption of fact. "A presumption of fact is an inference which a reasonable man would draw from certain facts which have been proven. Its basis is in logic, and its source is probability": Words and Phrases, 1st Series, vol. 6, p. 5537. "A presumption of law is conclusive, and is an inference which the court will draw from the proofs, which no evidence, however strong, will be permitted to overturn": Ibid., p. 5539. "A 'presumption of law' is a rule of law which the court draws from the requisite facts before it, and it must charge the jury to find in accordance therewith, while a presumption of fact is an inference of fact which cannot at common law be made without the intervention of the jury": Ibid., 2d Series, vol. 3, p. 1168. Of course, if other matters appear in connection with the killing which negative the presumption of fact, then the presumption of fact does not prevail.

In the Chapler Case, the trial court was asked to instruct the jury: "Murder in the first degree is limited to wilful, deliberate and premeditated killing, and the presumption from the use of a deadly weapon rises no higher than murder in the second degree." The opinion states: "The point was a correct expression of the law, and should have been unqualifiedly affirmed. The answer was as follows: 'That may be true where the defendant submits and no testimony is offered, but we have just said to you that the essential difference between murder in the first degree and murder in the second degree, is the intent to kill, and the jury may infer that intent from the use of the deadly weapon, where it was directed at a vital part of the body. With that modification we affirm the point.' The qualification was a virtual denial of the point, and amounted to an instruction that the presumption yielded when it was shown that a deadly weapon was used, directed at a vital part. This, as we have said, is not the law. Under no circumstances,

whether the party charged submits or does not submit, does the presumption rise higher than the second degree." In the opinion in the Chapler Case it is said that in Com. v. Greene, 227 Pa. 86, this court stated that whenever the Commonwealth asks for a conviction of murder in the first degree, it must overcome the presumption of second degree even after having established a felonious homicide committed by the use of a deadly weapon upon a vital part of the body of the deceased. If the writer of that opinion meant by this that no presumption of law could be depended upon to raise the grade of crime, that would be correct, but if he was speaking of a presumption of fact, his statement of law would be out of line with the thought of the best text writers and our earlier cases. That the writer had in mind a presumption of law would appear from this further language: "What he [the trial judge] intended the jury to understand was, that the fact that defendant used a deadly weapon was conclusive of the question of degree of guilt." It is noteworthy in that case that the defendant had gone upon the stand and given his narrative of the occurrence, disclaiming a purpose to kill. The charge of the court was open to criticism that its statement of the effect of the act of striking with a deadly weapon at a vital part obliterated the defendant's explanation and raised a conclusive legal presumption that the intent was to kill. The opinion says: "The instructions virtually withdrew all of this testimony [of the defendant] from the consideration of the jury, and left them to find the intent from the fact that a deadly weapon had been used and from that alone. Indeed even that was not even accorded them as a prerogative of their own, because they were instructed that they were obliged to so find. This was nothing less than a binding instruction and it was an erroneous instruction as well."

Whether the court in these two cases (Com. v. Chapler, 228 Pa. 630, and Com. v. Greene, 227 Pa. 86) was drawing a distinction between the raising of a presump-

tion of law and one of fact, it has been assumed, in several cases argued before us, that the decisions refer to any presumption arising from the use of a deadly weapon upon a vital part with a manifest intent so to use it, and that a trial judge errs in instructing that the presumption of an intent to kill arises under such circumstances. To set at rest any doubt on this matter we now lay down the principle that where one without sufficient cause of provocation unlawfully kills another by the use of a deadly weapon upon a vital part with a manifest intent so to use it, the presumption of fact arises, in the absence of qualifying circumstances, that he intended the consequence of his act and to kill his victim. We reassert and reëstablish the rule laid down in Com. v. Drum, 58 Pa. 9. What was there said gives result to what the legislature, by the Crimes Act of 1860, P. L. 382, designated as a murder of the first degree: "All murder......by any other kind of wilful, deliberate and premeditated killing......shall be deemed murder of the first degree." In the Drum Case, p. 17, Chief Justice AGNEW said: "If, from all the facts attending the killing, the jury can fully, reasonably, and satisfactorily infer the existence of the intention to kill, and the malice of heart with which it was done, they will be warranted in so doing. He who uses upon the body of another, at some vital part, with a manifest intention to use it upon him, a deadly weapon, as an axe, a gun, a knife or a pistol, must, in the absence of qualifying facts, *be presumed* to know that his blow is likely to kill; and, knowing this, *must be presumed* to intend the death which is the probable and ordinary consequence of such an act. He who so uses a deadly weapon, without a sufficient cause of provocation, *must be presumed* to do it wickedly, or from a bad heart. Therefore, he who takes the life of another with a deadly weapon, and with a manifest design thus to use it upon him, with sufficient time to deliberate, and fully to form the conscious purpose of killing, and without any sufficient reason or

cause of extenuation, is guilty of murder in the first degree." We can imagine no act more strongly indicative of an intent to kill than the deliberate shooting of a bullet into another's head. From such circumstances without qualifying facts the presumption of fact that the slayer intended to take life must arise in a reasoning mind and a trial judge is justified in calling this presumption to the attention of the jury.

A careful reading of the charge satisfies us of its fairness and that the criticism that it magnified the prosecution's case and minimized the defense is unwarranted. The trial judge could not properly have excluded from the jury's consideration the question of first degree murder as appellant urges he should have done. The elements of that crime are present. There was no error committed in refusing a new trial.

The assignments are all overruled, the judgment affirmed and the record remitted to the court below that its sentence may be carried out.