## Commonwealth *v.* Turner, Appellant.

Argued November 20, 1950. Before DREW, C. J., STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*Edwin P. Rome,* with him *Clinton Budd Palmer,* for appellant.

*Colbert C. McClain,* Assistant District Attorney, with him *John H. Maurer,* District Attorney, for appellee.

OPINION BY MR. CHIEF JUSTICE DREW, May 23, 1951:

This is an appeal by Aaron Turner from his second conviction of murder in the first degree, committed during the perpetration of a robbery, with sentence of death fixed by the jury. From a similar sentence following his first conviction an appeal was taken to this Court and the judgment affirmed. (*Commonwealth v. Turner,* 358 Pa. 350, 58 A. 2d 61) Judgment of this Court was reversed by the United States Supreme Court (338 U. S. 62; 69 S. Ct. Rep. 1352) on the ground that a confession by Turner was improperly admitted into evidence because obtained under coercive circumstances.

Turner and two accomplices, Jasper Johnson and Clarence Lofton, were jointly indicted for the murder of one Frank Endres. Lofton who was the "lookout" during the commission of the robbery, eventually pleaded guilty and was sentenced to life imprisonment. Johnson, on a plea of not guilty, was separately tried and convicted of murder in the first degree, with sentence of death. On appeal to this Court the judgment was affirmed (*Commonwealth v. Johnson,* 365 Pa. 303, 74 A. 2d 144) but the judgment of this Court was reversed by the United States Supreme Court on Novem-

ber 13, 1950 in an order without opinion, citing its decision in the *Turner* case (338 U. S. 62, supra).

It is unnecessary to recite the facts of the brutal killing of the deceased. They are fully set forth in the opinion of Mr. Chief Justice MAXEY in *Commonwealth v. Turner*, 358 Pa. 350, 351 et seq.

At the second trial of Turner now here for review, the objectionable confession was not introduced into evidence but the testimony of Turner and of Johnson and Lofton given at a preliminary hearing admitting their guilt was received into evidence and it is contended that this testimony at least in so far as Turner is concerned, was the product of the same coercion that produced his written confession. Under the opinion of the United States Supreme Court in the *Turner* case and its disposition of the *Johnson* case, we are compelled to so find.

The crime was committed on December 15, 1945. Lofton was arrested on May 24, 1946; and Turner and Johnson on June 3, 1946. Turner and Johnson were immediately taken to City Hall, Philadelphia, and there held continuously in the custody of the police from June 3rd until sometime after June 8th, under circumstances which the United States Supreme Court held were inherently coercive. During this period they were repeatedly questioned by one or more of seven police officers. On the sixth day of their detention, June 8, 1946, their interview by the police officers was resumed and continued until 10:30 or 11:00 a.m., when they, together with Lofton, were taken before a magistrate in another room in City Hall for a preliminary hearing. The only persons present at this hearing were the same police officers who had engaged in their questioning, the magistrate and an assistant district attorney. After one of the police officers testified, the three defendants were sworn, and Johnson testified in detail as to how the crime was committed

and of the participation of each of the three men. Lofton and Turner then without the same detail affirmed Johnson's account of the commission of the crime.

Although the magistrate thereupon held the defendants "without bail for court", they were not committed to the county prison but turned over to the same police officers and detained in the latter's custody. Lofton, who appeared at the trial as a witness for the Commonwealth, testified that he remained in the custody of the police until June 12th before being taken to the county prison and couldn't remember whether Turner arrived there "the same day or the following day." Detective O'Mahoney admitted that Turner was not committed to the county prison until sometime after June 8th.

This Court in upholding the first Turner conviction and the Johnson conviction was not persuaded that the police officers had acted in an improper manner or that the confessions of Turner and Johnson were involuntary, but we are bound by the decisions of the United States Supreme Court and their clear import. In setting aside Turner's first conviction, Mr. Justice FRANKFURTER, speaking for the majority of the Court, in reviewing the circumstances of Turner's detention by the police from the time of his arrest on June 3, 1946, said, (338 U. S. 62, at p. 64) : "On June 7, the day when a confession was finally obtained, questioning began in the afternoon and continued for three hours. Later that day the officers who had been present during the afternoon returned with others to resume the examination of petitioner. Despite the fact that he was falsely told that other suspects had 'opened up' on him, petitioner repeatedly denied guilt. But finally, at about eleven o'clock, petitioner stated that he had killed the person for whose murder he was later arraigned. At nine o'clock the following morning

the same police officers started to reduce his statement to writing, interrupted this process to bring him for a preliminary hearing before a magistrate sitting in the same building, and returned to the transcript of his statement which was completed by about noon."

Turner's signed written confession has been deemed the result of inherent coercion. Certainly statements or admissions which he made at the preliminary hearing held during the coercive period and prior to his execution of the condemned confession must be considered tainted by the same infirmity. It is evident that the United States Supreme Court did not regard the interlude of the preliminary hearing as having purged the coercion. We are constrained to hold, therefore, that the testimony taken at the magistrate's hearing was inadmissible as evidence against Turner as was his confession.

Appellant also complains that the trial judge in effect gave binding instructions to the jury to find defendant guilty of murder in the first degree, if guilty at all, thus taking from the jury a matter exclusively for its determination, namely, the duty to fix the degree of guilt.

The trial judge read to the jury the provisions of Section 701 of the Act of June 24, 1939, P. L. 872, 18 PS §4701, under which defendant was indicted, as follows: " 'All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of wilful, deliberate and premeditated killing or which shall be committed in the perpetration of, or attempting to perpetrate any arson, rape, robbery, burglary or kidnapping, shall be deemed murder in the first degree; and all other kinds of murder shall be deemed murder in the second degree; and the jury before whom any person indicted for murder shall be tried, shall, if they find such person guilty thereof, ascertain in their verdict whether it be murder of the

first or second degree.' The supplement to that Act reads as follows: 'That every person convicted of the crime of murder of the first degree shall be sentenced to suffer death in the manner provided by law, or to undergo imprisonment for life, at the discretion of the jury trying the case, which shall fix the penalty by its verdict.' So you see why the commission of a killing in the perpetration of a robbery, under the Act of Assembly, is murder in the first degree."

However, after discussing and defining robbery, malice and reasonable doubt, the trial judge continued: *"There is no second degree murder in such a case and there is no sense even discussing it with you."* Other than the reading of Section 701, supra, by the trial judge and this dogmatic statement, the charge was completely void as regards second degree murder.

The Commonwealth endeavors to justify the trial judge's statement as a mere expression of opinion. Neither the language contained in the statement nor a reading of the entire charge supports such contention. The above statement completely removed the subject of second degree murder from the jury's consideration. At the conclusion of the charge the district attorney said: "I believe you did say your Honor can express an opinion, and I believe in your charge your Honor left open to the jury the right to find such verdict as they deem proper under the evidence, first degree, second degree, manslaughter or not guilty." The court then stated: "They can render such a verdict as they see fit. They are not restrained, coerced or limited." This statement to the jury fell far short of curing the positive statement of the trial judge eliminating murder in the second degree as a possible verdict.

The first paragraph of Section 701 of the Act of 1939 dealing with wilful, deliberate and premeditated murder and murder committed in the perpetration or

attempt to perpetrate certain felonies is identical with the provision of Section 74 of the Act of March 31, 1860, except for the addition of kidnapping to the four felonies named in the earlier Act. This Court has uniformly held that the jury, in a trial on an indictment for murder under Section 701, or its precedent counterpart, may not be deprived of its duty to determine the degree of guilt and a charge which withdraws this duty from it is error. *Rhodes v. Commonwealth,* 48 Pa. 396; *Lane v. Commonwealth,* 59 Pa. 371; *Commonwealth v. Fellows,* 212 Pa. 297, 61 A. 922; *Commonwealth v. Chapler,* 228 Pa. 630, 77 A. 1013; *Commonwealth v. Ferko,* 269 Pa. 39, 112 A. 38; *Commonwealth v. Foster,* 364 Pa. 288, 72 A. 2d 279; *Commonwealth v. Gibbs,* 366 Pa. 182, 76 A. 2d 608.

We are of the opinion that the jury in the instant case was clearly deprived of their right to fix the degree of the crime and the charge in this regard constituted reversible error.

Lofton, the confessed accomplice, was the principal witness against appellant. At the conclusion of the court's charge, the following request was made by counsel for appellant, and the following reply made thereto by the court: "Mr. Rome: Will your Honor also charge the jury concerning the manner in which they should treat the testimony of the self-confessed participant in the murder? In other words, the testimony that the witness presented should be received with reluctance and caution. The Court: No. They have a right to consider him as a credible witness if they so desire. Mr. Rome: Yes, sir. My point is they should consider his testimony with caution and receive it only with reluctance. The Court: That is not the law." This statement of the court was clear error. The Commonwealth contends that the statement of the court after discussing the testimony of the accomplice Lofton, "Did Lofton have a selfish interest

in his testimony?" was the equivalent of instructing the jury that they should receive Lofton's testimony with caution. With this we cannot agree. The testimony of an accomplice is to be carefully scrutinized, not only because of any interest he might have, but because his testimony is evidence from a corrupt source: *Kilrow v. Commonwealth,* 89 Pa. 480, 488. In *Commonwealth v. Haines,* 257 Pa. 289, 297, 101 A. 641, this Court, in reversing a conviction of murder, stated that on the new trial "the jury should be told that they must closely scrutinize such testimony [the testimony of an accomplice] and accept it with caution." And see *Commonwealth v. Elliott,* 292 Pa. 16, 140 A. 537. While the extent of the admonition to the jury is largely within the discretion of the trial judge (*Commonwealth v. Elliott,* supra), caution should be enjoined upon the jury. In any event, where the court is specifically requested to so charge, a refusal is error. Here the court's answer to counsel's request was practically an instruction to the jury that they need not receive the accomplice's testimony with any caution or reluctance whatsoever. This was clear error.

Since a new trial must be granted in view of the foregoing, it is unnecessary to consider other matters assigned as error by counsel for appellant.

The judgment is reversed and a *venire facias de novo* is awarded.