## Commonwealth *v.* Bitler, Appellant.

Argued September 27, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-
FELD, PARKER and RHODES, JJ.

*J. J. Hibbard,* with him *Lewis G. Shapiro,* for appellant.

*Charles Scott Williams,* for appellee.

OPINION BY KELLER, P. J., November 22, 1938:

The appellant, Fearns Bitler, served as the elected county treasurer of Lycoming County for the years 1932, 1933, 1934 and 1935. During the same period, by appointment of the county commissioners, he served as tax collector for county taxes in the sixteen wards

of the City of Williamsport, for which he was paid additional compensation of $4,000 a year. The county supplied him, as treasurer, with several clerks, Margaret Clark and Marie Reber. To assist him as tax collector he employed his brother-in-law, Charles N. Bullard, and appointed him a deputy county treasurer, but paid him a salary of $1,500 out of his own personal funds.

At the beginning of each year he received from the county commissioners a tax duplicate book and was charged with the collection of the taxes therein listed. Taxes that he was unable to collect or had not collected, he would return with his duplicate to the commissioners, and they issued him a tax exoneration certificate, signed by their clerk, with the seal of the county attached, exonerating him from the collection of these taxes, which were collected in another way.

Appellant was indicted in the court of quarter sessions, charged with having forged, defaced, altered and falsified eight of these tax exoneration certificates issued for taxes for the year 1934, in the first, third, fifth, sixth, eleventh, fourteenth, fifteenth and sixteenth wards, respectively, of the City of Williamsport, and with having caused the said tax exoneration certificates to be so forged, defaced, altered and falsified—all contrary to the provisions of the Act of March 31, 1860, P. L. 382, Section 171, p. 424, 18 PS Sec. 3633. The indictment contained sixteen counts, the first eight charging him with the forgery, alteration and falsification of the tax exoneration certificates, in the order above-stated, and the last eight charging him with having caused the said certificates to be forged, altered, falsified, etc. in the same order; so that counts one and nine, two and ten, etc. related to the same certificate. Each count set forth the particular forgery, alteration, etc. charged, which consisted in raising the amount exonerated by $1,000 or $2,000, and required the change of only one figure in the thousands place or position. In

addition, the second and tenth counts, which related to the exoneration certificate for the third ward, charged that he had forged, altered, falsified, etc. the exoneration certificate by eliminating from the paragraph stating the 'additional taxes' with which the collector was charged, the item "State [taxes] $12,398.71," and changing the total so as to correspond, and by forging thereto the signature of Joseph Duffy, the clerk [second count]; and that he had caused the said certificate to be forged, altered and falsified in these respects [tenth count]. The sum of the increases in the exonerations of the eight certificates, $12,000, and of the omission of the state tax charge, $12,398.71, was $24,398.71. The trial lasted eight days and resulted in a verdict of guilty on all sixteen counts. The court sentenced the defendant on the tenth county only, stating that as the offenses charged in the indictment were parts of a single continuing criminal act inspired by the same criminal intent, (*Com. v. Heston,* 292 Pa. 501, 504, 141 A. 287) it would impose but a single penalty. The defendant appealed.

The statement of questions involved, which limits the scope of our review of the case, presents four grounds of complaint, which we will consider in the order presented in the appellant's brief.

(1) Appellant complains that the charge of the court was misleading, inadequate, improper and unfair with reference to the offenses charged, the testimony of an accomplice, the review of the testimony of defendant's witnesses offered in contradiction, and in presenting the respective theories of the parties. We find no merit in this complaint. In our opinion the charge of the court was fair, adequate and in no respect misleading. The offense charged was of a nature that required little or no definition. It explained or defined itself. The defendant admitted that the exoneration certificates had been altered and falsified as set forth in the indict-

ment. He admitted a shortage in the payment of his tax collections for 1934 of approximately the total of the forgeries or alterations in the certificates, $24,398.71; in fact he admitted a total shortage in the payment of all his tax collections of $101,500. His defense was a denial that he had forged, altered and falsified the certificates or caused them to be forged, altered and falsified, and he claimed that the forgeries, alterations, etc. were done by his deputy, Charles N. Bullard, without his knowledge or authority. The trial judge explained the matter to the jury at length and charged them that before they could convict the defendant they must be satisfied beyond a reasonable doubt that he had altered or falsified the exonerations or had caused or procured that to be done, that is, had instigated, or solicited or requested Bullard to make the changes, etc., and the latter had made them in response to such solicitation and instigation. He told them that if they found from the evidence that Bullard altered and falsified the tax exoneration certificates solely on his own initiative and without any solicitation or request so to do by the defendant, and that the defendant did not cause, in any manner, or solicit or instigate Bullard to so alter or falsify said certificates, they should find the defendant not guilty. There is no doubt in our mind, that the jury understood the offense charged in the indictment, and the counts relating to it, and were not in any manner misled as to the issues being tried. Bullard testified as a witness for the Commonwealth that he had altered and falsified all the exoneration certificates, except the one for the third ward, by increasing the amount of the exoneration allowed, and that he had altered and falsified that one, in the manner set forth in the second and tenth counts, and had signed or traced Joseph Duffy's—the clerk's—name in attestation of it, all at the request and direction of the defendant in order to allow defendant to withdraw the money from his tax collection account, to make good a shortage in his trea-

surer's account; that defendant had gone with him to procure an Underwood typewriter, so that the figures when altered would correspond in type with the rest of the figures, which were written with an Underwood machine; that defendant was present at his (Bullard's) home, when some of the changes and alterations were made, among them, the certificate for the third ward. He was corroborated in a number of material particulars by other witnesses—see *Com. v. Girardot,* 107 Pa. Superior Ct. 274, 279, 163 A. 362; but notwithstanding this, the trial judge charged the jury fully, in accord with the directions of the Supreme Court and this Court in *Cox v. Com.,* 125 Pa. 94, 17 A. 227; *Com. v. McCloskey,* 273 Pa. 456, 462, 117 A. 192; and *Com. v. Klein,* 42 Pa. Superior Ct. 66, as to the care with which they should scrutinize the testimony of an accomplice, and the danger of convicting the defendant on the uncorroborated testimony of an accomplice. The trial judge did call the attention of the jury to the contradictions of Bullard's testimony by the defendant (*Com. v. Haines,* 257 Pa. 289, 101 A. 641), and to the testimony of certain other witnesses who corroborated the defendant. Defendant complains that the trial judge did not specially call the attention of the jury to the testimony of several witnesses who had contradicted Bullard on certain minor collateral matters, but to have done so would have introduced into the case a number of collateral issues which would have diverted the attention of the jury from the main question of fact. For example, if the defendant instigated the changes, it made little, if any, difference whether Bullard received the blank form of certificate, which he used to prepare the altered exoneration certificate for the third ward, from Joseph Duffy, or from some one else in the commissioners' office; unquestionably he got it; or whether he left the altered certificates with the defendant at his office, or placed them on Margaret

Clark's desk there, in the view of defendant, who later received them from Miss Clark; and the testimony of Fox and Harper did not contradict Bullard. The review of the Commonwealth's testimony, from the very nature of the case, took up more time than the *denial* of the defendant, but as we said in *Com. v. Viscosky,* 83 Pa. Superior Ct. 96, 105, "It is not required that the trial judge recite all the testimony in detail (*Com. v. McCloskey,* 273 Pa. 456), nor point out specifically every instance of contradiction and corroboration. It is enough that the attention of the jury be drawn in a general way to the evidence refuting and supporting the accomplice's testimony. This was done in the present case. It is to be noted also that when at the conclusion of the charge the court asked if further instructions were desired on any point, counsel for the defendants made no response. If the charge was deemed inadequate in any respect, the court's attention should have been directed to the subject complained of. That this was not done impels belief that the charge was not at the time considered inadequate: *Com. v. McCloskey,* supra, p. 461; *Com. v. Pava,* 268 Pa. 521, 525." The comment at the close of that quotation is likewise applicable here.

The assignments of error embraced within this ground of complaint are overruled.

(2) Appellant complains because Mrs. Bullard was permitted to testify in corroboration of her husband as to the presence of the defendant at their home when some of the alterations and falsifications were made. Her testimony was not objected to on the trial, but upon the authority of *Canole v. Allen,* 222 Pa. 156, 159, 70 A. 1053, the appellant now claims that it was fundamental error which calls for reversal.

The Act of May 23, 1887, P. L. 158, in Section 2(b), as amended by Act of May 11, 1911, P. L. 269, provides: "Nor [in such criminal proceeding] shall hus-

band and wife be competent or permitted to testify against each other, or in support of a criminal charge of adultery alleged to have been committed by or with the other, except that in proceedings for desertion and maintenance, and in any criminal proceeding against either for bodily injury or violence attempted, done or threatened upon the other, each shall be a competent witness against the other, and except also that either shall be competent merely to prove the fact of marriage, in support of a criminal charge of adultery or bigamy alleged to have been committed by or with the other." Section 5(c) contains a similar provision that husband and wife shall not be competent or permitted generally to testify against each other in civil proceedings; and it has been held in *Bell v. Throop,* 140 Pa. 641, 21 A. 408, and *Cunningham v. Crucible Steel Co.,* 56 Pa. Superior Ct. 568, that this prevents a wife from testifying in civil proceedings as to the turpitude or fraudulent misappropriation of her husband, although he was not a party to the case, as it would amount to testifying against her husband, within the meaning of the statute. The language of the Supreme Court in *Canole v. Allen,* supra, relied on by appellant, was amply justified there, for the wife was a party defendant in the action of trespass and the testimony of the husband, her co-defendant, called by the plaintiff as under cross-examination, was the only evidence offered to connect the wife with the trespass complained of.

We are not certain that the principle so broadly stated in *Bell v. Throop,* supra, and *Cunningham v. Crucible Steel Co.,* supra, is applicable to criminal proceedings, where the husband is not a party, for, by no possibility could he be affected thereby; but we are not required to decide that point, for the testimony of Mrs. Bullard, standing by itself, did not point to any turpitude or misconduct of her husband, and could not be construed or interpreted as testifying against him.

She merely corroborated her husband's testimony that the defendant had visited their home between Christmas, 1936, and New Year's Day following, and that her husband had shown him certain papers, which he had examined and approved. She knew nothing and testified to nothing in respect to the forgery, alteration or falsification of the certificates. Bullard himself testified to that. Nothing that she saw or testified to, of itself, stultified or injured her husband. It merely corroborated him in certain respects, that standing by themselves and without his testimony on other matters, were not harmful to him or "against him." It would be stretching the plain language of the statute too far to extend its provisions to her testimony in this case. See *Com. v. Pearlman,* 126 Pa. Superior Ct. 461, 476, 191 A. 365. The sixth assignment is overruled.

(3) Appellant complains that William R. Winn, a certified public accountant, who had made an examination of defendant's books and accounts for the county commissioners was permitted to testify as to the amount of the defendant's shortages in his tax collections for 1934 for the purpose of showing his motive for changing the tax exoneration certificates by approximately that amount. His present ground of objection is that the report of the county auditors was the best evidence. That objection was not raised at the trial. The only reason given at the trial why the evidence should be excluded was: "That is objected to because the defendant is indicted and being tried for the alteration and forgery of eight specific documents, and it is immaterial whether he had any motive for so doing; and proof of a motive would not be evidence of the performance of the actual act charged against him, or prove, or tend to prove the charges laid in the indictment as to any one of the several counts therein." A party complaining on appeal of the admission of evidence objected to in the court below will be limited to the specific objec-

tion made to it at the trial, except in case of basic or fundamental error: *Danley v. Danley's Exrs.*, 179 Pa. 170, 174, 36 A. 225; *Huffman v. Simmons*, 131 Pa. Superior Ct. 370, 375, 376, 200 A. 274, and cases there cited.

This was not an action on the treasurer's bond to collect the amount due the county; the recovery there would be fixed and determined by the report of the auditors, as finally settled. But the books and accounts of a county official can be examined by an accountant employed by the county to ascertain the amount of a shortage at a particular time, for the purpose of showing his motive for some criminal action intended to hide and conceal that shortage. There is no merit in the complaint. The seventh assignment is overruled.

(4) The fourth ground of complaint was not raised in the court below. It is not supported by any evidence in the record. The exhibits printed as addenda to the record (pp. 667a-686a) are no part of the record of this case and, without special permission, should not have been printed with the record. It arose in the following manner: In the course of its opinion refusing the motions for a new trial and in arrest of judgment, the court below referred to the fact, as bearing on the justness of the defendant's conviction and the credit to be given his testimony on the trial, that he had pleaded 'nolo contendere' and been sentenced on two separate charges of embezzlement of funds that had come into his hands as tax collector of county taxes [$1,500 and $1,000] and that these items formed a part of the total shortage of over $100,000, which it had been shown existed in his tax collection account. Appellant now contends that the sentence on those indictments was a bar to his sentence on the indictment for forgery, etc. There is no merit in the position. An examination of the exhibits in the addenda shows the embezzlements to have been charged as of June 19,

1935 and July 1, 1935, respectively. It does not appear that they related to taxes collected for 1934. The criminal offense charged in the present indictment took place in December, 1936. It was a wholly different offense committed more than a year after the offenses to which he pleaded nolo contendere. Forgery and embezzlement are not parts of one offense. They are entirely distinct. The only connection between them was that the forgery was committed long after the moneys were embezzled to hide and conceal the embezzlement. Prosecution and conviction for the embezzlement is no bar to prosecution, conviction and sentence for a forgery committed in an attempt to conceal the embezzlement of moneys taken and completed months before.

We held in *Com. v. Flick*, 97 Pa. Superior Ct. 169, 172-174, that evidence offered on a prosecution for forgery was not affected by the fact that it had been received in a former trial where defendant had been acquitted of arson, alleged to have been committed to hide his forgery and embezzlement. The two offenses were separate and distinct and not so interrelated as to include one within the other. See also, *Com. v. Corcoran*, 78 Pa. Superior Ct. 430; *Com. v. Leib*, 76 Pa. Superior Ct. 413, 423. The evidence of the defendant's shortages, introduced to show the motive for the forgeries, alterations and falsifications of the tax exoneration certificates could not have supported a conviction of forgery. Nor could the evidence of the alterations and falsifications of the tax exoneration certificates have supported a conviction of embezzlement. They related to wholly different and distinct crimes, even though the one may have led to and induced the other. The eighth assignment is overruled.

We will consider briefly two other matters argued by the appellant but not included in the statement of questions involved.

(5) The court was justified in refusing defendant's point as drawn, viz: "Counsel for the defendant request the court to charge the jury that there can be no conviction, under the evidence in this case, of the first eight counts in the indictment, which charge the defendant directly with having altered, defaced and otherwise forged these papers." As there was evidence in the case that the defendant was present in Bullard's home when certain of the tax exoneration certificates were being altered and falsified, the jury could find that as to those certificates he was guilty of having forged, altered, and falsified them. The fact that Bullard admitted having done the actual forgery, alteration and falsification involved did not prevent the jury from convicting the defendant of the same charge, if he was present and consenting when it was done.

The difference between committing a misdemeanor and causing or procuring it to be committed is very similar to the distinction between a principal and an accessory in the commission of a felony. "To constitute such an accessory [before the fact], it is necessary that he should have been absent at the time when the felony was committed; if he was either actually or constructively present, he is, as has been seen, a principal" 1 Wharton on Criminal Law, Sec. 263, 12th edition. "An accessory before the fact is one whose will contributes to another's felonious act, committed while too far himself from the act to be a principal": Bishop on Criminal Law, Sec. 616 [473]. (3d ed.). "If he is *present,* consenting, aiding, procuring, advising and assisting, he is a principal and must be indicted as such": *United States v. Wilson,* (No. 16730) 28 Fed. Cas. 699, 710. See also, *Vogel v. State,* 138 Wis. 315, 119 N. W. 190, 197.

In misdemeanors all are considered principals, and it is the clearly expressed intention of the criminal code that one who causes or procures the offense to be committed, or counsels, aids or abets in its commission,

may be "proceeded against and punished as the principal offender." See Act of March 31, 1860, P. L. 382, Sec. 180, as amended by Act of June 3, 1893, P. L. 286. One who is present, aiding and assisting at the commission of a misdemeanor is considered in the law as having committed it, just as one who is present, aiding and assisting, when a murder is committed, is a principal, guilty of murder, though he was not armed and another fired the fatal shot. The distinction—not an important one, in view of the fact that in misdemeanors all are considered principals—between one who commits a misdemeanor and one who causes or procures it to be done, is that the former includes the actual perpetrator and those present, aiding and assisting, and the latter embraces those who counsel, abet, cause or procure it to be done, but are neither the actual perpetrators nor present, aiding and assisting, at its commission.

(6) There was ample evidence to sustain a verdict of guilty on the count in the indictment on which the defendant was sentenced, the tenth. That being the case, the apparent inconsistency in the verdict in finding defendant guilty on the eight counts charging the commission of the offenses for which he was indicted as well as on the eight counts charging that he caused the commission of the offenses, is not important. See *Henwood v. Com.*, 52 Pa. 424; *Com. v. Holgate*, 63 Pa. Superior Ct. 246, 255; *Com. v. Stern*, 58 Pa. Superior Ct. 591, 603; *Stahl's App.*, 1 Pa. Superior Ct. 496; *Com. v. Beattie*, 93 Pa. Superior Ct. 404; *Com. v. Gittleson*, 88 Pa. Superior Ct. 190, 193; *Hutchison v. Com.*, 82 Pa. 472; *Com. v. Schoenleber*, 96 Pa. Superior Ct. 76. We have frequently refused to disturb judgment of sentence for larceny, or receiving stolen goods, where the verdict found the defendant guilty on both counts, provided the sentence was imposed on only one count. The assignments of error are

all overruled. As the appellant is in custody serving his sentence on the indictments to which he pleaded 'nolo contendere', we shall simply affirm the judgment.

Judgment affirmed.