Commonwealth *v.* Rankin et al., Appellants (No. 1).

2

Argued October 27, 1944; reargued March 13, 1945. Before BALDRIGE, P. J., RHODES, HIRT, DITHRICH and Ross, JJ. (Reno, J., absent.)

*Dean D. Sturgis* and *J. C. Glassburn,* with them *D. W. Henderson* and *W. F. Lane,* for appellants.

*James I. Marsh,* Special Deputy Attorney General, with him *James H. Duff,* Attorney General, for appellee.

OPINION BY BALDRIGE, P. J., July 19, 1945:

The appellants, when this prosecution arose, were duly elected commissioners of Fayette County. They were jointly indicted together with their chief clerk Earl Huston, at Nos. 71 and 73, March Sessions 1943.

Bill No. 71 charged the defendants with altering, defacing and falsifying the minute book of the county commissioners in that they "unlawfully and feloniously did then and there remove and cause to be removed . . . a certain page, known, designated and numbered as page

number six hundred and thirty-nine" of minute book 2, and substituted a new and different page on which was inserted an altered, defaced and falsified record of the proceeding of the meeting of the county commissioners held August 18, 1938.

Bill No. 73 accused the defendants with forging, defacing, altering, corrupting, withdrawing, falsifying and unlawfully avoiding a certain record, to wit, the minute book of the county commissioners, and causing, procuring, and being concerned in the same.

These two indictments, based on the same set of facts, were drawn under section 1020 of the Penal Code of 1939, June 24, P. L. 872, 18 PS §5020,[1] and were tried together. Huston, owing to illness, was unable to appear in court when the case was called; the trial proceeded, however, as to these appellants. The jury returned verdicts of guilty on both indictments. Following a denial of motions in arrest of judgment and a new trial, sentence was imposed on bill No. 71. Defendants have severally appealed from that judgment. Sentence was suspended on No. 73. That bill is not before this court, as no appeal was, or could be, taken as a suspended sentence is not a final judgment: *Commonwealth v. Torr*, 111 Pa. Superior Ct. 178, 169 A. 238. We might add that in our view the motion to arrest the judgment on that bill should have been sustained. It was drawn under the first portion of section 1020, which is not applicable to the facts in this case.

To understand the issues before us it is necessary to refer in some detail to the evidence. The County of Fayette became delinquent in the payment of taxes due the commonwealth on municipal loans for the years

---

[1] "Whoever forges, defaces, embezzles, alters, corrupts, withdraws, falsifies, or unlawfully avoids any record . . . or alters, defaces or falsifies any minute, document, book or any proceeding whatever, of, or belonging to, any public office, or causes or procures any of said offenses to be committed, or be in any wise concerned therein, is guilty of a felony . . ."

1931, to 1935, inclusive, in the sum of $68,715.50, with interest at the rate of 1% per month from the date of settlement. During a number of years the clerk of the courts of Fayette County had paid to the county treasurer, instead of remitting to the Department of Revenue, certain fines and penalties collected in criminal proceedings amounting to approximately $36,000.00 with interest. The commonwealth was demanding payment of this indebtedness also. The controller and commissioners claimed a credit, to which the commonwealth would not concede, for monies expended in the trial of what is known as the "Monaghan case" conducted in Fayette County by the Attorney General. In July 1938, the commissioners and controller discussed the pending controversy with Senator Anthony W. Cavalcante, a member of the bar then serving Fayette County in the senate. Conferences subsequently had between the State and county officials, including County Solicitor Martin and Senator Cavalcante, in an effort to reach a mutually satisfactory adjustment, proved unsuccessful. The commonwealth on March 1, 1940, filed a lien in the office of the prothonotary of Fayette County for the taxes imposed on municipal loans and thereafter issued a scire facias, claiming the sum of $104,809.53 due the commonwealth with interest, attorneys' fees, and costs. In pursuance to the request of Solicitor Martin for legal assistance to defend this proceeding, the commissioners on April 15, 1940, passed unanimously a resolution prepared by the county solicitor that Senator Cavalcante and W. Brown Higbee, Esq., be employed "each to be paid a fee of $2500.00 for their services, plus five per cent each for any amounts which they save the county on the state suit or collect for the county on the Monaghan case." Messrs. Cavalcante and Higbee were present when this resolution was passed and both agreed to the terms of the employment as fixed therein.

Further negotiations were had and finally an agreement was reached at Harrisburg on April 24, 1941, that

the county should pay $31,793.43 in settlement of the municipal loans taxes. This amount was determined by allowing the claim of the county for expenses paid in connection with the Monaghan case with interest thereon at 6% for four years, plus one-half of the difference between the interest on this sum and the interest on the loan taxes. On that same date the claim of the commonwealth for improperly retained fines and penalties was assessed against Harry T. Mathews, the clerk of the court in office at the time of settlement, in the sum of $22,945.17, after allowing certain credits. Cavalcante appeared for Mathews and appealed to the resettlement board, which sustained the assessment. An appeal followed to the Court of Common Pleas of Dauphin County which was still pending at the time of this trial.

On May 1, 1941, the County Sinking Fund Committee, consisting of the three commissioners, the treasurer, and controller, held a meeting and authorized the payment of the adjusted municipal loans taxes indebtedness of $31,793,43 and also the sum of $1,000.00 to Senator Cavalcante for "payment on expenses in connection with the settlement of lien" which had been filed by the commonwealth. Senator Cavalcante said this sum was treated by him as a payment on account of services rendered and not for expenses. On May 28, 1941, a warrant was drawn to the order of Cavalcante in the sum of $5,000.00, which was subsequently delivered to him.

About June 1, 1941, Mrs. Ruth Love, a newspaper reporter, was in the commissioners' office and saw lying on the desk of the secretary to the commissioners a warrant or voucher payable to Cavalcante with a written notation thereon "to be applied on a $10,000 fee," which aroused her interest. She inquired of Rankin concerning this fee and was told that Cavalcante was being paid $10,000 for getting "a nice settlement" at Harrisburg. A day or two thereafter she examined the minute books of the commissioners and saw the resolution authorizing this payment. She discovered an unnumbered page,

known as "639" between pages 638 and 640 in minute book 2. There appeared in a minute on this page a motion by Commissioner Rankin, seconded by Commissioner Higinbotham, referring to the Commonwealth's claim of $104,000 for taxes and $47,000 for unpaid fines and penalties, "that Senator A. W. Cavalcante be employed to adjust the claims with the aim that if he secures the settlement of these amounts for one-half the amount of said claim, which is approximately $70,000.00, his fee shall be $10,000.00. If the settlement is more than $70,000.00, then the said Senator A. W. Cavalcante shall only receive ten per cent of the amount saved to the County." This motion was unanimously passed.

Mrs. Love observed that in addition to the lack of a page number, the typewriting was fresher and the character of type was different than on the pages immediately before and after this particular one. Furthermore, there were only two signatures to the minutes; Commissioner Higinbotham had not signed at that time. She called Commissioner Karolcik's attention to the physical dissimilarity of this page to the other pages, that the indebtedness was set at $104,000 and it "wasn't $104,-000" in 1938 and asked him to explain to her the resolution. He uttered an exclamation evincing consternation and promised to furnish Mrs. Love with a carbon copy of the minutes he had at home, but he never did so. On June 6, 1941, three days after her story "broke" she spoke again to Karolcik with respect to the time the signatures were placed on page 639 and he replied: "We just signed that page last Tuesday." Mrs. Love stated it was some weeks after she first saw page 639 that it was numbered. There was testimony that Higinbotham said he signed page 639 within 30 days after the resolution was passed and that Karolcik stated he signed it within 60 days. There is no proof when Rankin signed it.

Mrs. Grace Martin Cornelius, the principal of a secretarial school, and Lt. Stanley S. Smith, of the Pennsylvania State Police, who qualified as experts in

analyzing typewritten documents, both testified as to the dissimilarity of the size and style of type on page 639, as it now appears in the minute book, and on pages 638 and 640. Each expressed the opinion that page 639 was written at the same time as the minutes for May 28, and 29, 1941, found on pages 1242 and 1243 of volume 3.

For the purpose apparently of adjusting a dispute over the amount of Cavalcante's fees, who was insisting upon being paid $10,000.00, the commissioners on August 21, 1941, passed another resolution providing "that the County of Fayette engaged Anthony Cavalcante for the purpose of settling claims against the County of Fayette on account of money paid by the clerk of courts into the county treasury which should have been paid to the state, and that the county pay him the sum of $4,000.00 as payment in full of this service, which shall also settle any and all past or present claims which Senator Cavalcante may have against the county on account of settlement of any claims of the state of Pennsylvania against the County of Fayette in any capacity whatsoever, and the payment of the above amount shall be payment in full of any and all services heretofore rendered or which shall be rendered in the future in settling the claims against the county because of the matter in the clerk of court's office or other claims against the county. It is the understanding that a resolution in 1938 which agreed to pay $10,000.00 for the above services rendered by Senator Cavalcante was cancelled by a resolution later agreeing to pay $2500.00 and five per cent for all money saved the county, and the intention of the above resolution is to settle any and all disputes as to the total amount to be paid and the above resolution hereby cancels the resolution to pay $10,000.00."

The defendants asserted that the disputed resolution of August 18, 1938, was actually adopted at the meeting held that day and was correctly recorded. They denied any knowledge or complicity in the alleged rewriting, altering, or falsifying of page 639, and contended in the court below, as they do here, that if it be assumed that

there had been a delay in writing the minutes, or that they had been rewritten, even with their consent, as they accurately record their actions there was no falsification and a crime was not committed.

It is argued that the commonwealth failed to show the contents of the original minutes and until that fact is established an alteration, defacement, or falsification thereof could not be determined.

Mrs. Kathryn R. Tormay, secretary to the commissioners until August 31, 1939, testified that part of her duties was to type the minutes of the meetings of the county commissioners; that she was not in the office from Friday, August 17, to Monday, August 20, 1938; when away for several days she would write the minutes upon her return to the office, but if her absence was more extended Miss Gusky, another employe, did that work. It was Mrs. Tormay's custom to keep temporarily the minutes in a folder and when there was an accumulation she numbered the pages, went over each day's minutes, indexed the resolutions or matters of importance and then transferred them into a large permanent book. She expressed the opinion that she had typed pages 638 and 640, and a page numbered 639, but it was not the page as now appears in minute book 2, which was not written on a Remington Noiseless typewriter equipped with elite type. She did not recall preparing, transcribing, or receiving any instructions pertaining to, a resolution employing Cavalcante as it presently appears in the minute on page 639, and it was not indexed; that if it had been on page 639 when the index was prepared it would have been included. She testified: "I don't believe I wrote [present] Page 639, and I don't think I put the number on it" but "I would say I" typed the minutes of August 18, 1938.

The main question before us is whether the trial judge committed error in charging the jury as follows: "So that we say to you that if you believe the testimony that goes to the point that a page in that book, a minute

of a meeting of the County Commissioners, was prepared by the witness Kathryn R. Tormay, and that the minute that she prepared was put in the Minute Book, and that the Page 639 that now is in that book is not the minute that she prepared and placed therein, then somebody committed the felony that is described in the Act of Assembly that I read in your hearing . . . She says [Mrs. Tormay] that she did write a Page 639. She testifies that Page 639 as it is now in that book is not, to the best of her belief and the best of her knowledge, the page that she wrote. If you accept that testimony as a fact—there is nothing to contradict it—then we say to you that there has been on the part of someone a commission of the crime described in this section of the Act of Assembly."

The correct answer to this inquiry depends upon the interpretation to be given section 1020 of the Penal Code, supra. If the proper construction of this section requires proof of fraud or falsification to sustain a conviction this verdict cannot stand. Section 1020, a material portion of which we have heretofore quoted, is under Article X, entitled "Offenses Against the Coin and Forgery" and the heading of the section is "Forgery, Defacing the Records, etc." It provides that one found guilty thereunder shall be "sentenced to pay a fine not exceeding three thousand dollars ($3,000.00) or to undergo imprisonment, by separate or solitary confinement at labor, not exceeding seven (7) years, or both."

Section 323 of this same statute comes under the title of "Offenses Against Public Justice and Administration." It provides that any public officer or other person who *fraudulently* makes "false entry in, or erases, alters . . . is guilty of a misdemeanor, and . . . shall be sentenced to pay a fine of one thousand dollars ($1,000.00) or to undergo imprisonment by separate or solitary confinement at labor, not exceeding two (2) years, or both." [2]

[2] Section 323 of the Penal Code of 1939, 18 PS §4323 Supp.), which is a substantial reenactment of section 15 of the Penal Code of

It will be observed this latter section, under which these defendants could have been indicted, requires that the entry must not only be false, but fraudulent, and the penalty is not nearly so severe as under section 1020. Under the lower court's charge fraud or falsification is not an essential element of proof. If that is so, less proof is required to convict one of a felony, carrying a heavy penalty, than is necessary to convict one of a misdemeanor under section 323. It is reasonable to assume that such a result was not contemplated by the legislature; that it intended in section 1020 to associate "alter" with the word "falsify" which follows. That construction has the support of a highly regarded textbook authority. See Endlich on Interpretation, §§401, 402. We are aware that there is a lack of uniformity in our statutes as to the penalties imposed, but nevertheless it is proper for us, in seeking the legislative intent, to compare these two sections included in one statute, and not give a construction to either that is unreasonable: §52 Statutory Construction Act, May 28, 1937, P. L. 1019, Art. IV, 46 PS §552.

The court in our judgment fell into error in assuming that if page 639 was rewritten, it was done unlawfully and feloniously. Feasible theories could have been adopted by the jury to account for the rewriting of the minutes, that would have exculpated these defendants. The instructions to the jury eliminated any possibility that the minutes might have been rewritten due to inadvertence or some oversight and without any unlawful and felonious intent. As Judge Morrow in his dissent-

---

1860, 18 PS §362, is very similar, except for the penalty, to section 1020, under which this indictment was drawn. The Historical Note to 18 PS §4323, states that it was reenacted for the following reason: "The title to so much property, so many varied interests, depends on the integrity of public records, that a vigorous and resolute protection is required to be extended to their sanctity." Section 1020 is a virtual reenactment of section 171 of the Penal Code of 1860, which was the amendment of the law of 1700, 1 Sm. L. 4, which was the forerunner of section 15 of the Code of 1860 and section 323 of the Act of 1939.

ing opinion pertinently points out, the resolution employing Cavalcante may not have been prepared immediately after it was passed as Mrs. Tormay was absent from the office; that upon her return the routine business transcribed on August 18, 1938, may have been typed and the resolution employing Cavalcante, which according to testimony of the defendants was to be prepared by their solicitor, was omitted, although regularly adopted. This omission may not have been discovered until later and then a clerk in good faith included it therein before the commissioners signed. The jury could have concluded something of that character occurred and if so the defendants should not have been found guilty of a felony with its heavy penalty.

Accordingly, the defendants' 10th point reading as follows: "If you find that the minutes of August 18, 1938, as now recorded speaks the truth as to the action taken by the Board of Commissioners at this meeting on August 18, 1938, there can be no conviction in this case", which was denied, should have been affirmed. True, the defendants' 8th point for charge, which stated in substance that the defendants could not be convicted unless the rewriting of page 639 was done "with an unlawful and improper motive" was affirmed. But we believe that the affirmance of that point did not correct the harm done in the charge and the refusal of the 10th point: *Commonwealth v. Dauphinee,* 121 Pa. Superior Ct. 565, 584, 585, 183 A. 807.

Furthermore, we think the trial judge unduly, and to the prejudice of the defendants, emphasized the portion of Mrs. Tormay's testimony that was favorable to the commonwealth. She not only testified that to the best of her knowledge and belief she did write a page 639, but she said also "I haven't any way of remembering that I typed a page 639 . . . I have no recollection of writing a page 639 . . . I can't recall [writing the minute]. Of course I couldn't remember what I did back that far. I don't remember writing this resolution." Her testimony

was not categorically denied by other witnesses, but portions of it, at least, are somewhat conflicting, negative in character, and indicate that she was expressing her conclusion. The jury should have been left entirely free to give such weight to her testimony as they saw fit, and to draw therefrom their own inference.

There is no direct proof of fraud. Much of the evidence relied upon by the commonwealth is circumstantial. It is sufficient, however, in quantity and quality to sustain a conviction under the rule laid down in *Commonwealth v. Holt,* 350 Pa. 375, 387, 388, 39 A. 2d 372, but it should have been submitted to the jury under correct instructions.

In view of our conclusion that trial errors require a new trial to be granted, we will not discuss the assignments relating to the alleged prejudicial manner in which Senator Cavalcante was cross examined by the attorney for the commonwealth, or to that part of the sentence dismissing Commissioner Rankin from office.

The judgment of the court below is reversed with a venire.