## Commonwealth v. McDonough

*Jeffrey P. Garton,* Deputy District Attorney, for Commonwealth.

*William J. Carlin,* for defendant.

MOUNTENAY, *J.,* May 28, 1975—This matter comes before the court on defendant's motions in arrest of judgment and for a new trial following his conviction under section 1020 of The Penal Code of 1939 (formerly 18 P.S. §5020), pertaining to the falsification of records "of or belonging to" a public office.

The Commonwealth's evidence revealed that defendant (the State Trooper supervising the Driver Examination Unit at the Pennsylvania State Police barracks at Trevose, Bucks County) had falsified certain records used and prescribed by the Pennsylvania State Police in connection with administering examinations for motor vehicle operator's licenses. Specifically, defendant was charged with falsifying two types of forms known as Form 081 and Form 082, respectively. The jury returned a verdict of not guilty with respect to all of the counts pertaining to the 081 forms but with respect to 082 forms found defendant guilty on four counts. Accordingly, the post-trial motions are concerned only with the 082 forms.

Defendant's basic position is that the falsification of a document such as Form 082 does not constitute a violation of section 1020. This section reads as follows:

"Whoever forges, defaces, embezzles, alters, corrupts, withdraws, falsifies, or unlawfully avoids any record, charter, gift, grant, conveyance or contract, or knowingly, fraudulently or unlawfully spares, takes off, discharges or conceals any fine,

forfeited recognizance or other forfeiture, or forges, defaces, or falsifies any registry, acknowledgment or certificate, or alters, defaces or falsifies any minute, document, book or any proceeding whatever, of, or belonging to, any public office, or causes or procures any of said offenses to be committed, or be in anywise concerned therein, is guilty of a felony, and upon conviction thereof, shall be sentenced to pay a fine not exceeding three thousand dollars ($3,000), or to undergo imprisonment, by separate or solitary confinement at labor, not exceeding seven (7) years, or both; and if a public officer, shall be removed from said office, and the same be declared vacant by the court passing sentence."

Briefly, the statute contemplates a falsification of "any record . . . of or belonging to any public office." Specifically, defendant argues (1) that section 1020 applies only to records and documents directed to be kept by law and preserved for public use, and (2) that a State Police barracks (where the driver examination unit was headquartered) does not constitute a public office within the meaning of the act. Defendant argues, alternatively, that even if a State Police barracks might, under some circumstances, constitute a public office, the trial judge erred in not permitting the jury to make this determination.

Form 082 is denominated "Station Record of Daily Examinations." It is not specifically mandated or directed by law, although its use is directed by the Pennsylvania State Police manual of procedures.[1] The form in question is essentially a list of

---

1. Received into evidence as defendant's exhibit no. 1.

the examinations conducted by an individual examiner on a given day. It consists of some 50 lines, each line containing information with respect to a single examination, including, inter alia, the operator's number as shown on the examinee's learner's permit, the signature of the examinee, and whether the examinee passed or failed the examination. At the end of each day, each examiner turns in his Form 082 for that day, and it is then kept on file at the barracks for the period of 12 months and then destroyed, all in accordance with the provisions of the manual. Specifically, defendant was charged with having falsified the signatures of certain "examinees" on these forms, it being the contention of the Commonwealth that the persons whose signatures were falsified had never, in fact, taken the examination but, by reason of defendant's machinations, had nevertheless been issued operator's licenses. It might be noted that there was no evidence offered tending to indicate that defendant had solicited or accepted any bribes or that he had received any material benefit in return for his efforts.

In support of his position that the 082 forms do not constitute records of the kind contemplated by section 1020 of The Penal Code of 1939, defendant points out, correctly, that section 1020 finds its source in section 171 of The Penal Code of 1860 and that the latter, in turn, has as its source the Act of 1700, Chapter XVI, 1 Sm.L. 4. He then argues that where the words of a statute are not explicit, the legislative intent may be ascertained by considering, among other things, the former law: Statutory Construction Act of December 6, 1972, P.L. 1339 (No. 290), 1 Pa.C.S.A. §1921(c)(5). Defendant then points to certain language in Ream v. Com-

monwealth, 3 S. & R. 207 (1817), decided under the Act of 1700, supra, which case held that records in the office of the Surveyor-General of the Commonwealth *did* come within the purview of the Act of 1700. The language in question, found at page 209, reads as follows:

"Every registry or enrolment, directed by law and preserved for the use of the public, is embraced by this act of assembly."

From this, defendant reasons by negative implication that records *not* "directed by law and preserved for the use of the public" did *not* constitute records protected by the Act of 1700 *nor*, therefore, by its successors, section 171 of The Penal Code of 1860 and Section 1020 of The Penal Code of 1939. Further, defendant cites examples of records held to have been protected by section 171 of The Penal Code of 1860 or by section 1020 of The Penal Code of 1939, viz., a writ of fieri facias (Commonwealth v. Cullen, 13 Phila. 442 (1879)); the minutes of a county commissioners' meeting (Commonwealth v. Rankin, 158 Pa. Superior Ct. 1, 43A., 2d 436 (1945)); and tax exoneration certificates (Commonwealth v. Bitler, 133 Pa. Superior Ct. 268, 2 A. 2d 493 (1938)); noting that all of these cases involved documents directed by law and preserved for the use of the public.

Even assuming for purposes of argument that the language of section 1020 is unclear, it appears to us that defendant's reasoning is fallacious in several respects. In the first place, while all of the cases cited by defendant involve documents the keeping of which was prescribed by statute, none actually holds that *only* records "directed by law and preserved for the use of the public" are protected by the legislation in question, not even Ream v. Com-

monwealth, supra, upon which defendant places his primary reliance. Moreover, of all the cases cited, only the language of Ream v. Commonwealth even suggests this result, and then only by negative implication. And even if such a result should obtain under the ruling of Ream v. Commonwealth, it must be borne in mind that Ream v. Commonwealth was decided under the Act of 1700, supra, which contained in its preamble the following language:

"Whereas the security of titles and property, in a great measure, depends on the safety and certainty of writings and records, Be it enacted . . ." etc.

If such was the legislative purpose of the Act of 1700, it is understandable that the court might limit the application of that act to such documents as deeds, wills, grants, mortgages et cetera, filed or recorded pursuant to the provisions of one of the recording acts. But this language of the preamble to the Act of 1700 was not perpetuated in the subsequent enactments, and no one would seriously argue that the successor acts were limited to protecting "titles and property." See, for example, Commonwealth v. Rankin, supra, holding that the minutes of a county commissioners, meeting fell under the protection of section 1020. Accordingly, we do not believe that defendant's authorities support his contention that in order to come within the scope of section 1020, the record in question must be "directed by law and preserved for the use of the public."

Moreover, we see no necessity for looking to prior enactments in an effort to glean an indication of legislative intent. Section 1020 of The Penal Code of 1939 contains no language which even suggests that its application be limited to records "directed

by law." Where the language is explicit, statutory construction is not required. The court may not alter, under the guise of "construction," the express language and intent of the legislature: Commonwealth v. Pope, 455 Pa. 384, 317 A. 2d 887 (1974).

Finally, while we find no legislative provision specifically requiring the preparation and filing of Form 082, the General Assembly has mandated the examination and licensing of the operators of motor vehicles, and the records in question have been adopted as a means of carrying out that mandate.[2]

Defendant next argues that even though Form 082 should constitute a "record," a State Police barracks does not constitute a public office within the meaning of the act. We are not sure that the term "record" . . . of, or belonging to, any public office"[3] lends itself to this dichotomy. Nevertheless, since defendant thus presents his argument, we shall follow the same approach.

The term "public office" is capable of several interpretations. and in this respect, it may be neces-

[2]. The responsibility of the Pennsylvania State Police is established as follows: section 601 of The Vehicle Code of April 29, 1959, P.L. 58, as amended, 75 P.S. §601, provides that no person shall operate any motor vehicle upon a highway unless such person has been licensed as an operator or a learner by the *department* under the provisions of the act. Section 102, 75 P.S. §102, of The Vehicle Code, defines "department" as the Department of Revenue. Section 710(g) of The Administrative Code, 71 P.S. §250(g), imposes upon the Pennsylvania State Police the duty of assisting the Department of Revenue in the issuance of operators' licenses. Section 2001 of The Administrative Code, 71 P.S. §511, incidentally, transfers to the Department of Transportation the former responsibilities of the Department of Revenue under The Vehicle Code.

[3]. The identical language is contained in both section 1020 of The Penal Code of 1939 and section 171 of The Penal Code of 1860.

sary to look for guidance to decisions under prior legislation. These decisions have applied three sometimes overlapping yet somewhat distinct concepts to the term "public office." They are (1) a public officer,[4] (2) an office where the records on file therein are routinely examined by the public and are, therefore, public records in the strictest sense,[5] and (3) a governmental office serving a public purpose. The third category is exemplified by the case of Commonwealth v. Wyoda, 44 Pa. Superior Ct. 552 (1910), which case provides an interesting parallel to our own.

In Commonwealth v. Wyoda, supra, the defendant (not himself a public employe) forged a miner's certificate purporting to be issued by the Miners' Examining Board for the third inspection district of Pennsylvania. This board was charged by law with the responsibility of certifying coal miners who passed the prescribed examination. The purpose of certification, as pointed out in the charge of the trial court, was to protect miners from the incompetency or negligence of their fellows. In this respect, the functions of the Examining Board are seen to be quite similar to the functions of the Driver Examination Unit of the Pennsylvania State Police. In any event, Wyoda held that a forgery of the miner's certificate constitutes a criminal offense,[6] though a new trial was granted on other grounds. It is interesting to note that the forged

---

4. County Commissioners and minutes of their meetings: Commonwealth v. Rankin, supra.

5. A prothonotary's office: Commonwealth v. Bitler, supra.

6. Strangely, the Act of 1860 is not cited in the opinion. However, this case is cited by Purdon under section 1020 of The Penal Code of 1939 together with all the other cases decided under prior legislation.

document "belonged" in a sense, to a public office, viz., the Miners' Examining Board, but the forged document was itself never even filed or kept in that office. We think that a Driver Examination Unit of the Pennsylvania State Police is as much a public office as was the Miners' Examining Board for the Third Inspection District of Pennsylvania. Both served a similar public purpose; neither constituted a "records office" such as the office of a prothonotary; and neither dealt with the functions of a "public officer" in the sense of an elected official or of a high ranking appointed official. Therefore, we conclude that a State Police barracks does constitute a public office for the limited purpose of section 1020.

Defendant argues alternatively that even if the State Police barracks (or the driver's examination unit, as the case may be) might constitute a public office under certain conditions, the trial judge should still have left that determination to the jury. We do not agree. The trial judge, in his instructions to the jury, said:

"Now the second element of the offense is that the falsification must be to a registry, acknowledgment, or certificate of or belonging to a public office. Now you have heard the testimony and as I recall—but this is really for you to recall, not for me—but as I recall, the Commonwealth's testimony indicated that both forms 081 and 082 were regularly used and were part of the established procedure recognized by the Pennsylvania State Police in connection with examinations for operator's licenses. Now, if the Commonwealth has established that fact beyond a reasonable doubt, then you would be justified in concluding that they are records or registries or certificates, or acknowledgments of a public office, or belonging to a public

office. Of course, if the Commonwealth has not established beyond a reasonable doubt that they are forms which were regularly used as part of established procedure for the examination of applicants for operator's licenses, then you would not be justified in concluding that the second element has been fulfilled."

As previously noted, the function of the Pennsylvania State Police with respect to the examination of applicants for motor vehicle operator's licenses was established by law. We believe, therefore, that whether the record in question is one "of or belonging to a public office" is a question of law to be decided by the court and not by the jury.

Finally, defendant asserts that the acts which he committed fall within section 328 of The Penal Code of 1939, added by the Act of September 26, 1951, P.L. 1535 (formerly 18 P.S. §4328), entitled "Falsification in matters within jurisdiction of state agencies."[7] This, he argues, is an indication that section 1020, pertaining to records of, or belonging to, a public office, should not apply. But it seems clear that the two provisions are not mutually exclusive. To conclude otherwise would be to conclude that section 1020 had no application whatever to records of any "public office" which

---

7. The text of this section reads as follows:

"Whoever, in any matter within the jurisdiction of any department, board, commission or agency of the Commonwealth of Pennsylvania, knowingly and willfully falsifies, conceals or covers up, by any trick, scheme or device, a material fact, or makes any false, fictitious or fraudulent statements or misrepresentations, or makes or uses any false writing or document, knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be sentenced to pay a fine not exceeding three hundred dollars ($300) or undergo imprisonment not exceeding one (1) year, or both."

was affiliated in any way with the Commonwealth of Pennsylvania, or at least with its executive branch. We do not believe that such was the legislative intent, particularly inasmuch as section 328 was not enacted until 1951, more than ten years after the adoption of the original Penal Code of 1939. Thus, the fact that defendant might have been prosecuted under section 328 does not signify that section 1020 has no application.

In summary, we are of the opinion that Form 082 is a record of, or belonging to, a public office and that, as such, it falls within the operation of section 1020 of The Penal Code of 1939. Defendant's post-trial motions, therefore, must be denied.

### ORDER

And now, May 28, 1975, defendant's motions for a new trial and in arrest of judgment are hereby denied and dismissed. Defendant is directed to appear before the undersigned for sentencing at a date to be fixed by the district attorney.